**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| **JONES REAL ESTATE, INC., d/b/a JONES REALTY**, individually and on behalf of all others similarly situated,<br><br>                                 **Plaintiffs,**<br><br>                                 **v.**<br><br>**AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, AVATEL TECHNOLOGIES, INC., THE CIT GROUP INC., and ASSURANT, INC.,**<br><br>                                 **Defendants.** | **Case No. 1:17-cv-23933**<br><br>**JURY TRIAL DEMANDED**<br><br>**Assigned to:** |

**CLASS ACTION COMPLAINT**

Plaintiffs JONES REAL ESTATE, INC., d/b/a JONES REALTY, files this Class Action Complaint individually and on behalf of all other similarly situated against AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, AVATEL TECHNOLOGIES, INC., THE CIT GROUP INC, and ASSURANT, INC., and ("Defendants"), alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

**INTRODUCTION**

1.      Defendants' force places insurance when a customer fails to obtain or maintain insurance coverage on voice, data, and/or video equipment that is leased through financing. Under the typical lease agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to "force place" a new policy on the equipment and then charge the premiums to the borrower.

2.     Defendants have engaged in a lucrative profit-making scheme. These companies and their affiliates enter into exclusive relationships with the equipment lease and finance companies to provide the insurance policies.  To maintain their exclusive relationships with these equipment lease and finance companies, the insurers pay unearned "kickbacks" of a percentage of the force-placed premiums ultimately charged to the borrower, offer them subsidized administrative services, and/or enter into lucrative captive reinsurance deals with them.

3.     The money to finance the forced-place insurance schemes comes from unsuspecting borrowers who are charged inflated force-placed insurance premiums by lenders. In many instances borrowers are required to pay for back-dated insurance coverage to cover periods during which no claims were made or for coverage that exceeds the legal requirements resulting in payment of improper fees.

4.     The Defendants' force-placed insurance schemes take advantage of the broad discretion afforded to the lenders and/or lessors in standard form agreements.

5.     Although force-placed insurance is designed to protect the lender's interest in the equipment that secures the loan and thus should not exceed that interest, lenders often purchase coverage from their exclusive insurers in excess of that required to cover their own risk. And, as a matter of practice, the lenders collude with the two major force-placed insurers to manipulate the force-placed insurance market and artificially inflate the premiums charged consumers, resulting in premiums up to *ten times* greater than those available to the consumer in the open market.

6.     Loaners, Lenders, and force-placed insurers reap these unconscionable profits entirely at the expense of the unsuspecting borrower.

7.     Defendants' self-dealing and collusion in the force-placed insurance market has caused substantial harm to the named Plaintiff and the putative classes Plaintiff represents. This

2

class action seeks to redress that harm on behalf of these classes of consumers and to recover all improper costs they have incurred related to the forced placement of insurance by the lenders, their affiliates, and their cooperating insurers.

### PARTIES

8.     Plaintiff JONES REALTY, INC., d/b/a JONES REALTY is corporation organized under the laws of Missouri with a principal place of business in Missouri.  Plaintiff is a small business who has been damaged as a result of Defendant's unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent business practices.

9.     Defendant AVATEL TECHNOLOGIES, INC. ("Avatel" or "Defendants") is a Florida corporation, with a principal place of business in Brandon, Florida.

10.     AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA ("American Bankers" or "Defendants"), is a Florida corporation with a principal place of business in Miami, Florida.  American Bankers Insurance Company of Florida underwrites the force-placed insurance at issue in this case is a subsidiary of Assurant, Inc.

11.     THE CIT GROUP, INC. ("Defendants" or "CIT") is a Delaware corporation with its principal place of business in Livingston, New York.  CIT Group Inc. is a financial holding company founded in 1908 headquartered in New York City. The company's name is an abbreviation of an early corporate name, Commercial Investment Trust. It provides financing and leasing capital to customers in over 30 industries. CIT also operates CIT Bank, an FDIC insured bank, its primary bank subsidiary.

12.     Defendant ASSURANT, INC. ("Assurant" or "Defendants") is a Delaware corporation with its principal office in New York, New York. Assurant participates in the force-placed insurance market through one of its divisions, American Bankers.  "ASSURANT GLOBAL

SPECIALTY OPERATIONS" is a trade name that Assurant owns and allows its subsidiaries and affiliates (including American Bankers and CIT) to operate their force-placed insurance business under this d/b/a..  Assurant Global Specialty Operations is located in Miami, Florida, and shares the same P.O. Box in Miami, Florida as CIT Group, Inc.'s Insurance Service Center.

13.     At all times herein mentioned, the acts and omissions of Defendants proximately caused the injuries and damages as herein alleged.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.) in that:

a.  the number of members of the proposed plaintiff class is greater than 100;

b.  members of the plaintiff class are citizens of a State different from any Defendant;

c.  the amount in controversy, aggregated among all individual class members, plus statutory damages and attorney's fees, exceeds $5 million.

15.     This Court has jurisdiction over Defendants because they are foreign corporations authorized to conduct business in Florida, are doing business in Florida and have registered with the Florida Secretary of State, or do sufficient business in Florida, have sufficient minimum contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion, marketing, sale, and administration of lending services and insurance policies in Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or related entities permissible under traditional notions of fair play and substantial justice.

16.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants

4

transact business and may be found in this District. Venue is also proper here because at all times relevant hereto a substantial portion of the practices complained of herein occurred in the Southern District of Florida.

17.     All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

18.     Permitting a lender and/or lessor to forcibly place insurance on leased and/or financed equipment and to charge the borrower the full cost of the premium is neither a new concept nor a term undisclosed to borrowers in loan and/or lease agreements. The standard form loan and/or lease agreements used by most major lenders and/or lessors include a provision requiring the borrower to maintain hazard insurance coverage on the equipment being leased, and, in the event the insurance lapses, permit the lender to obtain force-placed coverage and charge the premiums to the borrower rather than declare the borrow in default.

19.     What is unknown to borrowers and not disclosed in the loan and/or lease agreements is that lenders and loan servicers have exclusive arrangements with certain insurers to manipulate the force-placed insurance market and artificially inflate premiums. The premiums are inflated to provide lenders and servicers with kickbacks disguised as "commissions" (usually paid to an affiliate), or provide the lender and/or lessor or its servicer (through an affiliate) with lucrative reinsurance arrangements as well as include unmerited charges. The borrower is then forced to pay the inflated premiums.

### The Force-Placed Insurance Scheme

20.     Lenders and loan and/or lease servicers purchase master or "umbrella" insurance policies that cover the entire portfolio of loan and/or lease loans. In exchange, the insurer obtains

the exclusive right to force insurance on leased and/or financed equipment within the portfolio when the borrower does not have insurance or the lender determines the lessee's and/or borrower's existing insurance is inadequate. The insurer monitors the lender's loan portfolio for lapses in lessee's and/or borrower's insurance coverage. Once a lapse is identified, the insurer, through the force-placed insurance vendor, sends notice to the borrower that insurance will be "purchased" and force-placed if proof of adequate insurance coverage is not provided.  The lessee and /or borrower then either (1) must buy insurance in excess of the value of the equipment being insured. However, if a lapse continues, the insurer force-places the insurance at the lessee and/or borrowers expense.

21.     No individualized underwriting ever takes place for the force-placed coverage. Insurance is automatically placed on the equipment and the premium is automatically charged to the borrower.

22.     Once coverage is forced on the equipment, the lender and/or lessor charges the borrower and/or lessee for the insurance premiums. The lender and/or lessor, through their exclusive force-placed vendor, automatically adds the amount to the borrower's and/or lessee's monthly invoice.

23.     The lender and/or lessor or its servicer then pays the premium to the insurer who then kicks back a set percentage of the premium to the loan and/or lease lender's a/or lessor's or servicer's affiliate as a "commission."  The affiliate then shares a percentage of that payment with the lender and/or lessor or its servicer, sometimes in the form of "soft dollar" credits.

24.     The money paid back to the lender and/or lessor or servicer's affiliate is not given in exchange for any services provided by the affiliate; it is simply grease paid to keep the force-placed machine moving. In an attempt to mask the kickback as legitimate, the materials sent to the

borrower and/or lessee by one or more Defendants or their agents discloses to the borrower and/or lessee that one or more Defendants and/or an affiliate may receive a "financial benefit" if the equipment being leased and/or financed is covered through their policy.  In reality, however, no work is ever done by the Defendants and/or affiliate to procure insurance for that particular borrower because the coverage comes through the master or umbrella policy already in place.

25.     Under this highly profitable force-placed insurance scheme, lenders and/or lessors and servicers are incentivized to purchase and force-place the excessively priced force-placed insurance policy on a borrower's equipment because the higher the cost of the insurance policy, the higher the kickback.

26.     The companies providing force-placed insurance to lenders and/or lessors and servicers also enter into agreements for the insurer to provide servicing activities on the entire loan portfolio at below cost. The servicing costs are added into the force-placed premiums which are then passed on to the borrower. The insurers are able to provide these services below cost because of the enormous profits they make from the hyper-inflated premiums charged for force-placed insurance.

27.     Ultimately it is the unsuspecting borrower who suffers the consequences of these unconscionable practices.

**The Defendants' Exclusive Arrangements**

28.     Defendant Assurant and its subsidiary, American Bankers, has an exclusive arrangement with the Avatel and/or CIT to monitor their lease portfolio and provide force-placed insurance. In addition to the subsidized lender and/or lessor services they receive from Assurant, the Avatel and/or CIT are directly, or through an affiliate, kicked back a percentage of the force-placed premium or compensation through reinsurance arrangements.

29.     The actions and practices described above are unconscionable and done in bad faith with the sole objective to maximize profits. Borrowers who for whatever reason have not provided proof of insurance are charged hyper-inflated and illegitimate non-competitive "premiums" for force-placed insurance that include undisclosed kickbacks to the Defendants or their affiliates (who, as described above, perform little to no functions related to the force-placement of the individual policies), as well as the cost of captive reinsurance arrangements and administrative services.

30.     Furthermore, Plaintiff and Class Members do not in the normal course of their business have insurance on the phones provided by Defendants; therefore, it was almost without question that Plaintiff and Class Members would need the insurance forced on them as result of a contract provision, drafted and imposed by Defendants.

31.     This action is brought to put an end to Defendants' exclusive, collusive, and uncompetitive arrangements, and to recover for Plaintiff and the Classes the excess amounts charged to them beyond the true cost of insurance coverage.

**Plaintiff Jones Real Estate, Inc., d/b/a Jones Realty**

32.     Plaintiff Jones Real Estate, Inc., d/b/a Jones Realty is a Missouri business who signed up with Avatel Technologies, Inc. to provide telephones and telephone service.

33.     Plaintiff did not provide proof of insurance to Defendants.

34.     CIT notified Plaintiff in writing that it was providing financing for the equipment it was leasing from Avatel.

35.     CIT notified Jones Real Estate Inc., **after** Plaintiff had already entered into the applicable agreement, that Plaintiff must insure the equipment against loss, damage, destruction and theft for its replacement cost, naming [CIT] as loss payee.

36.     Important Property Insurance Notice Letter at 1 (dated 10/20/2016) provides:

If you choose to have the equipment covered under our policy, you will be responsible for paying us a monthly charge as long as such coverage and your lease or loan agreement remain in effect.*  Such coverage includes the premium costs and any administrative service fees. This charge to you may be more than the cost of insurance you can buy on your own.

If the policy described in this brochure is used to provide coverage on the equipment, and you subsequently provide verification of your own insurance that meets the requirements of the lease or loan agreement, then coverage under our policy will be cancelled on the effective date of your own insurance coverage and we will credit your account for any paid insurance charges up to a maximum period of six (6) months.

The information contained herein is general and should not be considered a complete representation of any coverage on equipment under our policy. The actual terms, conditions and exclusions in the policy will prevail over the information in this brochure. You are not an insured, an additional insured, or a loss payee under this policy. We or an affiliate of us may receive a financial benefit if you choose to have the equipment covered under our policy.

Our, we and us refer to the lessor/lender identified on the front of the brochure.

See Exhibit A.

37.     At no time did Plaintiff agree to pay for insurance at a higher price than market price for insurance for the leased equipment and/or at no time did Plaintiff agree to pay for insurance for the leased equipment that was in excess of the value of the leased equipment as more fully described herein.

38.     Nevertheless, Defendant forced placed insurance that had broader coverage than what was required to protect the interest of the Defendant in the following respects:

a. the force-placed policy covers not only fire, theft, and other causes of loss normally covered under a commercial property or business policy, but it also covers flood, wind, earthquake, hurricane and power surge.

b. the policy covered two lease or loan payments up to a maximum of $2,500 while the damaged equipment is not available for use.

c.  The maximum amount that will be paid is $250,000 per occurrence.

d.  Covered losses are paid without a deductible.

e.  The coverage also provided arguably less coverage to Plaintiff in that it does not cover losses less than $100.

39.  CIT required insurance in an amount that exceeded the value of the equipment leased or financed.

40.  Defendant charges Plaintiff $19.58 a month for each month of the lease for the force-placed insurance, which not only includes the excessive charge for hyper-inflated insurance but also administrative service fees and kickbacks which Plaintiff did not agree to pay.

41.  A percentage of the premium was kicked back to CIT, Assurant, and/or an affiliate.

42.  Also, Defendants unilaterally imposed unconscionable lease terms on Plaintiff and the Classes in that the cost of the equipment lease is grossly disproportionate to the actual value of the equipment subject to the lease.

43.  There is no material difference between these Defendants' actions and practices directed to Plaintiff and their actions and practices directed to the Class.

## CLASS ALLEGATIONS

**A.  Class Definitions**

44.  Plaintiff brings this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of itself and all other persons similarly situated.

45.  Plaintiff seeks to represent the following classes:

All borrowers and/or lessees in the United States who, within the applicable statutes of limitations, were charged for a forced-placed insurance policy placed on equipment leased and/or financed through Avatel Technologies, Inc. and/or CIT Group, Inc. and /or these companies affiliates, entities, or subsidiaries.

All borrowers and/or lessees in Missouri who, within the applicable statutes of

limitations, were charged for a forced-placed insurance policy placed on equipment leased and/or financed through Avatel Technologies, Inc. and/or CIT Group, Inc. and /or these companies affiliates, entities, or subsidiaries.

All borrowers and/or lessees of equipment leased and/or financed through Avatel Technologies, Inc., CIT Group, Inc., and/or these companies' affiliates, entities or subsidiaries in Missouri who, within the applicable statute of limitations, paid for an insurance policy that exceeded the value of the equipment being leased and/or financed.

All borrowers and/or lessees of equipment leased and/or financed through Avatel Technologies, Inc., CIT Group, Inc., and/or these companies' affiliates, entities or subsidiaries in the United States who, within the applicable statute of limitations, paid for an insurance policy that exceeded the value of the equipment being leased and/or financed.

### B.    Numerosity

46.    The proposed classes are so numerous that joinder of all members would be impracticable. Defendants lease and provide financing for telephone equipment and service insurance policies in the states of Missouri, Florida, and other states nationwide. The individual class members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Defendants. The precise number of class members for each class numbers at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

### C.    Commonality

47.    There are questions of law and fact that are common to all Plaintiff's and class members' claims. These common questions predominate over any questions that go particularly to any individual member of the Classes. Among such common questions of law and fact are the following:

a.      Whether Defendants charged borrowers for unnecessary insurance coverage including, but not limited to, insurance coverage that exceeded the amount required by law or the borrowers' loans and/or leases and/or backdated coverage that covered periods of time for which Defendants had no risk of loss;

b.      Whether Defendants breached the lease and/or loan contracts with Plaintiff and the Classes by charging them for force-placed insurance that included illegal kickbacks (including unwarranted commissions and reinsurance payments) and by charging Plaintiff and the Class for servicing their loans;

c.      Whether Defendants have been unjustly enriched at the expense of the Plaintiff and the Classes;

d.      Whether the lender- and loan and/or lease-servicer Defendants breached the implied covenant of good faith and fair dealing by entering into exclusive arrangements with selected insurers and/or their affiliates, which resulted in inflated insurance premiums being charged to Plaintiff and the Classes;

e.      Whether the Defendants manipulated forced-placed loan and/or lease purchases in order to maximize their profits to the detriment to Plaintiff and the Classes;

f.      Whether affiliates of the lenders or servicers perform any work or services in exchange for the "commissions" or other "compensation" they collect; and/or

g.      Whether the premiums charged are inflated to include kickbacks and unwarranted "commissions."

h.      Whether an objective consumer would be deceived by Avatel Technologies, Inc. and/or CIT Group, Inc.'s arrangement, which incentivizes Defendants to charge excessive fees for force-placed insurance, and therefore violates Florida's Deceptive and Unfair Trade practices law;

i. Whether Defendants unilaterally imposed unconscionable lease terms on Plaintiff and Class in that the cost of the equipment lease is grossly disproportionate to the actual value of the equipment subject to the lease;

p. Whether the force-placed insurers intentionally and unjustifiably interfered with the Plaintiff's and the Classes' rights under the loan and/or lease contracts by paying kickbacks to the loan and/or lease servicers or their affiliates and by charging for administering the loan portfolio; and

q. Whether Plaintiff and the Class Members are entitled to damages and/or injunctive relief as a result of Defendants' conduct.

**D.   Typicality**

48. Each Plaintiff is a member the Class he or she seeks to represent. Plaintiff's claims are typical of the respective classes' claims because of the similarity, uniformity, and common purpose of the Defendants' unlawful conduct. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendants' wrongful conduct.

**E.   Adequacy of Representation**

49. Plaintiff is an adequate representative of the class Plaintiff seeks to represent and will fairly and adequately protect the interests of that class.  Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

50. To prosecute this case, Plaintiff has chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.      Requirements of Fed. R. Civ. P. 23(b)(3)**

51.      The questions of law or fact common to Plaintiff's and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiff and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured and their deceptive and egregious actions involved in securing the force-placed policy.

52.      Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

53.      As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**G.      Superiority**

54.      A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a)      Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

(b)      Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions;

(c)      There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

(d)      The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(e)     Individual suits would not be cost effective or economically maintainable as individual actions; and

(f)     The action is manageable as a class action.

**H.     Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

55.     Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

56.     Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

57.     **Certification of Particular Issues.  Fed. R. Civ. P. 23(c)(4).**  Issue certification is also appropriate because the following particular issues (among others) exist that may be brought or maintained as a class action:

a.     Whether Defendants charged borrowers for unnecessary insurance coverage including, but not limited to, insurance coverage that exceeded the amount required by law or the borrowers' loans and/or leases and/or backdated coverage that covered periods of time for which Defendants had no risk of loss;

b.     Whether Defendants breached the lease and/or loan contracts with Plaintiff and the Classes by charging them for force-placed insurance that included illegal kickbacks (including unwarranted commissions and reinsurance payments) and by charging Plaintiff and the Class for servicing their loans;

c.     Whether Defendants have been unjustly enriched at the expense of the Plaintiff and the Classes;

d.      Whether the lender- and loan and/or lease-servicer Defendants breached the implied covenant of good faith and fair dealing by entering into exclusive arrangements with selected insurers and/or their affiliates, which resulted in inflated insurance premiums being charged to Plaintiff and the Classes;

e.      Whether the Defendants manipulated forced-placed loan and/or lease purchases in order to maximize their profits to the detriment to Plaintiff and the Classes;

f.      Whether affiliates of the lenders or servicers perform any work or services in exchange for the "commissions" or other "compensation" they collect;

g.      Whether the premiums charged are inflated to include kickbacks and unwarranted "commissions;"

h.      Whether an objective consumer would be deceived by Avatel Technologies, Inc. and/or CIT Group, Inc.'s arrangement, which incentivizes Defendants to charge excessive fees for force-placed insurance, and therefore violates Florida's Deceptive and Unfair Trade practices law;

k.      Whether the force-placed insurers intentionally and unjustifiably interfered with the Plaintiff's and the Classes' rights under the loan and/or lease contracts by paying kickbacks to the loan and/or lease servicers or their affiliates and by charging for administering the loan portfolio; and/or

l.      Whether Plaintiff and the Class Members are entitled to damages and/or injunctive relief as a result of Defendants' conduct.

## COUNT I
## BREACH OF CONTRACT
### (Against Avatel Technologies, Inc. and CIT Group Inc.)

58.      Plaintiff re-alleges and incorporates paragraphs 1 through 57 above as if fully set forth herein and further allege as follows.

59.     Plaintiff and all Class Members similarly situated have loan and/or leases that are owned and/or serviced by Avatel Technologies, Inc. and/or CIT Group, Inc..

60.     Plaintiff's and these Class Members' loans and/or leases are written on uniform loan and/or lease forms and contain substantially similar provisions regarding force-placed insurance requirements and its placement by the Avatel Technologies, Inc. and/or CIT Group, Inc.

61.     Plaintiff's and the Class Members' loans and/or leases require that they maintain insurance on their equipment and provide that if they fail to do so, then the lender and/or lessor may obtain insurance coverage to protect its interest, "force place" it, and charge the borrower / lessee the cost of the insurance.

62.     Kickbacks are not "costs" of insurance. Avatel Technologies, Inc. and/or CIT Group, Inc. breached the loan and/or lease contract by, among other things, charging Plaintiff amounts beyond the actual "cost" of force-placed insurance, amounts that were returned to the Avatel Technologies, Inc. and/or CIT Group, Inc. or its affiliate pursuant to undisclosed agreements among the Avatel Technologies, Inc. and/or CIT Group, Inc., their affiliates, and their exclusive force-placed insurance provider.

63.     Specifically, Avatel Technologies, Inc. and/or CIT Group, Inc. breached the loan and/or lease agreement by providing for its affiliate to obtain "compensation," either through a kickback or reinsurance premiums, when their affiliate provided no services to Plaintiff and played no role in the purchase of force-placed insurance for them.

64.     Avatel Technologies, Inc. and/or CIT Group, Inc. have violated the loan and/or lease contracts by charging Plaintiff and the Class members for excessive and unnecessary force-placed insurance at prices well in excess of the actual "cost" of coverage, and further by charging borrowers for force-placed insurance premiums that are not reasonable or appropriate to protect

the note-holder's interest in the equipment and rights under the security instrument.

65.     Plaintiff and the Class members have suffered damages as a result of the Avatel Technologies, Inc.'s and/or CIT Group, Inc.'s breaches of contract.

66.     **WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks compensatory damages resulting from Avatel Technologies, Inc.'s and/or The CIT Group, Inc.'s breach of contract, as well as injunctive relief preventing it from further violating the terms of the loans and/or leases. Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Avatel Technologies, Inc. and The CIT Group Inc.)

67.     Plaintiff re-alleges and incorporates paragraphs 1 through 57 above as if fully set forth herein and further alleges as follows.

68.     A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

69.     Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

70.     Plaintiff and the Class Members' loan and/or lease contracts allow the loan and/or lease servicer to force place an insurance policy on the borrower's equipment in the event of a lapse in coverage, but do not define standards for selecting an insurer or procuring an insurance policy.

71.     The loan and/or lease contracts afford Avatel Technologies, Inc. and/or The CIT

Group, Inc. absolute discretion in force placing insurance coverage. They are permitted to unilaterally choose the company from which they purchase insurance and negotiate a price for the coverage they procure. The servicers have an obligation to exercise the discretion afforded them in good faith, and not capriciously or in bad faith. Plaintiff does not seek to vary the express terms of the loan and/or lease contract, but only to ensure that the Avatel Technologies, Inc. and/or The CIT Group, Inc. exercise their discretion in good faith.

72.     Avatel Technologies, Inc. and/or The CIT Group, Inc. breached the implied covenant of good faith and fair dealing by, among other things:

(a)     Using their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting high-priced force-placed insurance policies to maximize their own profits;

(b)     Failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price;

(c)     Assessing inflated and unnecessary insurance policy premiums against Plaintiff and the Class and misrepresenting the reason for the cost of the policies;

(d)     Collecting a percentage or allowing its affiliates to collect a percentage of whatever premiums are charged to Plaintiff and the Classes and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest- priced premiums possible;

(e)     Charging Plaintiff and the Classes for commissions when the insurance is prearranged and no commission is due;

(f)     Charging Plaintiff and the Classes an inflated premium due to the captive reinsurance arrangement;

(g)     Charging Plaintiff and the Classes for having the vendor perform their obligation of administering its loan and/or lease portfolio which is not chargeable to Plaintiff or the Classes;

(h)     Force placing insurance coverage in excess of what is required by law or borrowers' loan and/or lease agreements; and

(i)     Force placing insurance coverage in excess of that required to cover the lender's and/or lessor's interest in the equipment, or the balance owed on the loan.

73.     As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Classes have suffered damages.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek a judicial declaration determining that the premiums charged and the terms of the force-placed insurance policies violate the duties of good faith and fair dealing. Plaintiff also seeks compensatory damages resulting from Defendants' breaches of their duties. Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

### COUNT III
### UNJUST ENRICHMENT
**(Against Avatel Technologies, Inc., The CIT Group Inc., Assurant, Inc.,
and American Bankers Insurance Company of Florida)**

74.     Plaintiff re-alleges and incorporates paragraphs 1 through 57  above as if fully set forth herein and further alleges as follows:

75.     The Avatel Technologies, Inc., The CIT Group Inc., Assurant, Inc., and American Bankers Insurance Company of Florida received from the above-named Plaintiff and Class Members benefits in the form of inflated insurance premiums related to force-placed insurance policies, unwarranted kickbacks and commissions, captive reinsurance arrangements, and subsidized loan servicing costs.

76.     These Defendants entered into an agreement whereby the insurance vendor,

Assurant and/or American Bankers Insurance Company of Florida would provide force-placed insurance policies to Avatel Technologies, Inc. and/or The CIT Group Inc. through their preferred insurance carriers for the portfolio of loans and/or leases monitored on behalf of Avatel Technologies, Inc. and/or The CIT Group Inc. Avatel Technologies, Inc. and/or The CIT Group Inc. would then charge Plaintiff and the Classes premiums that were far more expensive than those available to borrowers for voluntary policies that provide even more coverage.

77.     Avatel Technologies, Inc. and/or The CIT Group Inc. also collected premiums on force-placed policies that provided coverage in excess of that required by law or the borrowers' loan and/or lease agreement, and in excess of that required to protect the lender's interest in its collateral.

78.     Assurant and American Bankers Insurance Company of Florida paid and collected significant monies in premiums, kickbacks, commissions, and reinsurance tied directly to the cost of the force-placed insurance premium (as a percentage).  Commissions or kickbacks were paid directly to the Avatel Technologies, Inc. and/or The CIT Group Inc. to be able to exclusively provide force-placed insurance policies.

79.     The kickbacks and commissions, reinsurance arrangements, and subsidized costs were subsumed into the price of the insurance premium and ultimately paid by the borrower. Therefore, all Defendants had the incentive to charge and collect unreasonably inflated prices for the force-placed policies.

80.     Further, Avatel Technologies, Inc. and/or The CIT Group Inc. received financial benefits in the form of kickbacks and for other financial payments from Assurant and/or American Bankers Insurance Company of Florida..

81.     As a result, Plaintiff and the Classes have conferred a benefit on these Defendants.

82.     These Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

83.     These Defendants will be unjustly enriched if they are allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which Defendants were unjustly enriched at his or her expense.

**WHEREFORE**, Plaintiff, individually and on behalf of all similarly situated Class Members, demand an award against the Defendants in the amounts by which these Defendants have been unjustly enriched at Plaintiff's and the Class Members' expense, and such other relief as this Court deems just and proper.

### COUNT IV
### VIOLATION OF THE FLORIDA DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT
### (against Avatel Technologies, Inc. and/or CIT Group, Inc.)

84.     Plaintiff re-alleges and incorporates paragraphs 1 through 57 above as if fully set forth herein and further alleges as follows.

85.     FDUTPA, section 501.201, *et seq.,* Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

86.     The Plaintiff and the Florida Subclass are "consumers" as that term is defined in section 501.203(7) of FDUTPA.

87.     These Defendants have engaged in, and continue to engage in, unconscionable acts or practices and engaged in unfair or deceptive acts in the conduct of their trade and/or commerce in the State of Florida.

88.     The policies, acts and practices alleged herein were intended to result and did result in the payment of inflated premiums for force-placed insurance by the Plaintiff and the Classes,

which in turn were intended to generate unlawful or unfair compensation for Avatel Technologies, Inc. and/or The CIT Group, Inc.

89.     Specifically, Avatel Technologies, Inc. and/or The CIT Group, Inc. had an exclusive relationship with its vendor and preferred insurance carrier, whereby it would pay unreasonable and inflated premiums for force-placed insurance policies, charge that amount to Plaintiff and the Classes, and would then receive compensation through either kickback or captive reinsurance arrangements based on a percentage of the insurance policy's premium.

90.     Avatel Technologies, Inc.'s and/or The CIT Group, Inc.'s conduct of charging inflated and excessive premiums for force-placed insurance to Plaintiff and class members violates FDUTPA and was conceived, devised, planned, implemented, approved, and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA.

91.     Avatel Technologies, Inc. and/or The CIT Group, Inc. unilaterally imposed unconscionable lease terms on Plaintiff and Class in that the cost of the equipment lease is grossly disproportionate to the actual value of the equipment subject to the lease

92.     Avatel Technologies, Inc. and/or The CIT Group, Inc. are not banks or savings and loan associations regulated by the Florida Office of Financial Regulation of the Financial Services Commission. Further, neither entity is a bank or savings and loan association regulated by federal agencies.

93.     The above-named Plaintiff and the Classes sustained damages as a direct and proximate result of Avatel Technologies, Inc. and/or The CIT Group, Inc.'s unfair and unconscionable practices. Section 501.211(2), Florida Statutes provides Plaintiff and the Classes a private right of action against Avatel Technologies, Inc. and/or The CIT Group, Inc. and entitles them to recover their actual damages, plus attorneys' fees and costs.

94.     The above-named Plaintiff and the Classes have suffered and will continue to suffer irreparable harm if Avatel Technologies, Inc. and/or The CIT Group, Inc. continue to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE,** Plaintiff, individually and on behalf of all others similarly situated, demand judgment against Avatel Technologies, Inc. and/or The CIT Group, Inc. for compensatory damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

<u>**COUNT V**</u>
**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**
**(against Assurant and American Bankers Insurance Company of Florida)**

95.     Plaintiff re-alleges and incorporates 1 through 57 above as if fully set forth herein and further allege as follows.

96.     The above-named Plaintiff and the Class Members have advantageous business and contractual relationships with Avatel Technologies, Inc. and/or The CIT Group, Inc. pursuant to the loan and/or lease contracts. Plaintiff and the Classes have legal rights under these loan and/or lease contracts. For example, these Plaintiff and the Classes have a right not to be charged exorbitant premiums in bad faith for forced-place insurance.

97.     Assurant and its subsidiary American Bankers Insurance Company of Florida have knowledge of the loan and/or lease contracts and the advantageous business and contractual relationship between Plaintiff and Avatel Technologies, Inc. and/or The CIT Group, Inc.. Assurant and American Bankers Insurance Company of Florida are not parties to the loan and/or lease contracts and are not third-party beneficiaries of the loan and/or lease contracts. Further, Assurant and American Bankers Insurance Company of Florida do not have any beneficial or economic interest in the loan and/or lease contracts.

98.     Assurant and American Bankers Insurance Company of Florida intentionally and unjustifiably interfered with the Plaintiff's and the Classes' rights under the loan and/or lease contracts, as described above by, *inter alia,* entering into an exclusive relationship with Avatel Technologies, Inc. and/or The CIT Group, Inc. and their affiliates whereby they provide compensation (kickbacks, reinsurance, and low cost services) to Avatel Technologies, Inc. and/or The CIT Group, Inc. in exchange for the exclusive right to force-place excessive and unnecessary premiums which are purposefully and knowingly charged to Plaintiff and the Classes.

99.     Plaintiff and the Classes have been damaged as a result of Assurant's and American Bankers Insurance Company of Florida's interference with their loan and/or lease contracts by being charged bad faith, exorbitant and illegal charges for force-placed insurance in contravention of their rights under the loans and/or leases.

**WHEREFORE,** Plaintiff and all Class members similarly situated seek a judgment in their favor against Assurant and American Banker's Insurance Company of Florida for the actual damages suffered by them as a result of their tortious interference. Plaintiff also seeks all costs of litigating this action including attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated demand judgment against Defendants as follows:

(1)     Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and their counsel to be representatives of the Classes;

(2)     Enjoining Defendants from continuing the acts and practices described above;

(3)     Awarding damages sustained by Plaintiff and the Classes as a result of Defendants'

breaches of the subject loan and/or lease contracts and the implied covenant of good faith and fair dealing, together with pre-judgment interest;

(4)     Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiff and the Classes, together with pre-judgment interest;

(5)     Awarding Plaintiff and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Classes' counsel and experts, and reimbursement of expenses;

(6)     Awarding the Plaintiff and Subclass damages, injunctive relief, declaratory relief, attorneys' fees, and costs under the relevant states' consumer protection act;

(7)     Awarding damages sustained by Plaintiff and the Classes as a result of Assurant, Inc. and American Banker's Insurance Company of Florida's tortious interference;

(8)     Awarding compensatory and treble damages, and attorneys' fees and costs under the federal RICO statute; and

(9)     Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and the Classes request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Dated: <u>10/26/17</u>                              By: <u>    /s/     Jason Whittemore            </u>
                                                                        WAGNER MCLAUGHLIN, P.A.
                                                                        Jason K. Whittemore
                                                                        Florida Bar #:  0037256
                                                                        601 Bayshore Blvd., Suite 910
                                                                        Tampa, Florida 33606
                                                                        Telephone: (813) 225-4000
                                                                        Email: jason@WagnerLaw.com
                                                                        Secondary email: arelys@wagnerlaw.com

                                                                        **ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASSES**