UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-CV-23933-UNGARO-O'SULLIVAN

JONES REAL ESTATE, INC. d/b/a
JONES REALTY, individually and on
behalf of all others similarly situated,

      Plaintiff,

               v.

AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA, AVATEL
TECHNOLOGIES, INC., CIT GROUP INC.,
AND ASSURANT, INC.

      Defendants.

_____/


**DEFENDANT CIT GROUP INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TO DISMISS COUNTS I, II, III AND IV AND <u>INCORPORATED MEMORANDUM OF LAW</u>**

<u>TABLE OF CONTENTS</u>

Page

Table of Authorities ............................................................................................................ ii

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF FACTS AND ALLEGATIONS ................................................... 1

III.  ARGUMENT AND CITATION OF AUTHORITY ................................................... 4

   A.    THE COURT LACKS PERSONAL JURISDICTION OVER CIT GROUP ............... 4

       1.  *Plaintiff Has Not Pled Facts To Support General Jurisdiction.* .................................. 5

       2.  *Plaintiff Has Not And Cannot Allege Facts Sufficient To Establish Specific
           Personal Jurisdiction.* ....................................................................................... 8

   B.    PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST CIT GROUP .................. 11

       1.  *Plaintiff Fails to State a Breach of Contract Claim Because CIT Group Inc. was
           not a Party to the Lease.* .................................................................................. 12

       2.  *Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing* ............... 13

       3.  *Plaintiff Has Failed to State a Claim for Unjust Enrichment.* ................................ 14

           a.  Plaintiff is Subject to a Contract Which Bars its Unjust Enrichment Claim .... 14

           b.  Plaintiff Conferred No Benefit On CIT Group Inc. ....................................... 15

           c.  Plaintiff Got What It Bargained For. ........................................................... 15

       4.  *Plaintiff Fails To State A Claim For Violation Of FDUTPA.* ................................ 16

   C.    PLAINTIFF'S SHOTGUN PLEADING SHOULD BE DISMISSED. ....................... 19

CONCLUSION.................................................................................................................... 20

CERTIFICATE OF SERVICE .............................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alhassid v. Bank of America*,
  60 F. Supp. 3d (S.D. Fla. 2014) ...............................................................12, 13, 14

*American Safety Ins. Svc., Inc. v. Griggs*,
  959 So. 2d 322 (Fla. App. 5 Dist. 2007) ...................................................14, 15, 16

*American-European Art Assocs., Inc. v. Trend Galleries, Inc.*,
  227 A.D .2d 170, 171 (N.Y.A.D. 1 Dept. 1996)...............................................13, 14

*Bazak Intern. Corp. v. Tarrant Apparel Group*,
  347 F. Supp. 2d 1 (S.D.N.Y. 2004) .......................................................................15

*Bizrocket.com, Inc. v. Interland, Inc.*,
  274 Fed. Appx. 776, 779 (11th Cir. 2008)............................................................12

*Bristol-Myers Squibb Co. v. Superior Court of Calif.*,
  137 S. Ct. 1773 (2017)..............................................................................5, 9, 10

*Brown v. Carruval Corporation, et al.*,
  202 F. Supp. 3d 1332, 1346 (S.D. Fla. 2016) ......................................................11

*Carmouche v. Tamborlee Mgmt., Inc.*,
  789 F. 3d 1201 (11th Cir. 2015) ...............................................................4, 5, 6, 8

*Casey v. Florida Coastal School of Law, Inc.*,
  2015 WL 10096084 (M.D. Fla. 2015) ...................................................................17

*Centurion Air Cargo, Inc. v. United Parcel Service, Co.*,
  420 F. 3d 1146 (11th Cir. 2005) ..........................................................................13

*Consolidated Dev. Corp., v. Sherritt, Inc.*,
  216 F. 3d 1286 (11th Cir. 2000) ........................................................................4, 8

*Daimler A.G. v. Bauman*,
  134 S. Ct. 746 (2014)...................................................................................5, 8, 9

*East Okeechobee Palms LLC v. Kellam*,
  2015 WL 12977392 (S.D. Fla. 2015) ...............................................................4, 9, 11

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*,
  500 F. 3d 1276 (11th Cir. 2007) ............................................................................4

*Fraser v. Smith*,
   594 F. 3d 842 (11th Cir. 2010) ..................................................................8, 9

*Georgia Malone & Co., Inc. v. Rieder*,
   973 N.E. 2d 743 (N.Y. 2012) .....................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846 (2011) ........................................................................ *passim*

*Hawaiian Airlines, Inc. v. AAR Aircraft Services, Inc.*,
   167 F. Supp. 3d 1311, 1321 (S.D. Fla. 2016) .........................................14, 15, 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   104 S. Ct. 1868 (1984) ...............................................................................7

*Howard v. Turnbull*,
   316 S.W. 3d 431 (Mo. App. W.D. 2016) ..................................................14, 15, 16

*International Shoe Co. v. Washington*,
   66 S. Ct. 154 (1945) ..................................................................................5

*MeterLogic, Inc. v. Copier Solutions, Inc.*,
   126 F. Supp. 2d 1346 (S.D. Fla. 2000) .......................................................4

*Porsche Cars N. Amer. Inc. v. Diamond*,
   140 So. 3d 1090 (Fla. 3d DCA 2014) .......................................................17, 18

*Reitz v. Nationstar Mortg., LLC*,
   954 F. Supp. 2d 870 (E.D. Mo. 2013) .......................................................13, 14

*Riley v. Home Retention Servs., Inc.*,
   No. 14-20106, 2014 WL 11906642 (S.D. Fla. June 17, 2014) ...................19

*Shells & Fish Import and Export Co. v. Process Engineering and Fabrication, Inc.*,
   2013 WL 6842804 (S.D. Fla. 2013) ..........................................................4, 5, 8, 11

*Smith v. Chase Manhattan Bank USA, N.A.*,
   293 A.D. 2d 598, 741 N.Y.S. 2d 100 (2002) ............................................16

*Strategic Income Fund, LLC v. Spear, Leeds & Kellogg, Corp.*,
   305 F. 3d 1293 (11th Cir. 2002) ................................................................19

*Turner v. Wesslak*,
   453 S.W. 3d 855 (2014) .............................................................................13

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ...............................................................................5, 8, 9, 10

*Weiland v. Palm Beach Cty. Sherriff's Office,*
    792 F. 3d 1313 (11th Cir. 2015) ........................................................................19

*Yepez v. Regent Seven Seas Cruises,*
    2011 WL 3439943 (S.D. Fla. Aug. 5, 2011)...............................................................11

*Zlotnick v. Premier Sales Group, Inc.,*
    480 F. 3d 1281 (11th Cir. 2007) ...........................................................16, 17, 18

**Statutes**

Fla. Stat. § 48.193 ............................................................................................1

Fla. Stat. § 48.193(1) .......................................................................................9

Fla. Stat. § 48.193(1)(a) ................................................................................5, 8, 9

Fla. Stat. § 48.193(2) ......................................................................................5, 6

Fla. Stat. § 501.212(4)(c) ...................................................................................19

**Other Authorities**

Rule 12(b)(2)....................................................................................................4

## I.      INTRODUCTION

CIT Group Inc., incorrectly named "The CIT Group Inc." on the summons and the Class Action Complaint (the "Complaint"), hereby moves to dismiss Counts I, II, III and IV because this Court has neither general nor specific jurisdiction over CIT Group Inc.   Additionally, Plaintiff Jones Real Estate, Inc. d/b/a Jones Realty's ("Jones Realty" or "Plaintiff") has failed to state any claim against it, in light of the lack of privity between Plaintiff and CIT Group Inc.   In short, CIT Group Inc. has never had any dealings with Jones Realty, is not a party to the AVAYA Financial Services Lease Agreement ("Lease") between Jones Realty and CIT Bank, N.A. and does not have meaningful or systematic business contacts with Florida.   Thus, the exercise of jurisdiction over it in this case would be contrary both to Florida's long-arm statute, Fla. Stat. § 48.193, and contrary to Federal due process requirements.   Moreover, because CIT Group Inc. is not a party to the Lease giving rise to Jones' Realty's claims, or to the reinsurance agreements with American Bankers Insurance Company of Florida ("American Bankers"), about which Plaintiff complains, the Complaint does not state claims for breach of contract, breach of implied covenant of good faith, unjust enrichment or Florida Deceptive and Unfair Trade Practices Act against CIT Group Inc.

## II.      STATEMENT OF FACTS AND ALLEGATIONS

On October 13, 2016, Jones Realty signed a lease agreement with CIT Bank, N.A.   *See* Lease, Ex. I; Compl. at 32, 34.   The two page Lease stated, at the top of the first page that CIT Bank, N.A. was the Lessor.   Lease, Ex. I, p. 1.   Nowhere on the Lease is CIT Group Inc. mentioned. Also at the top of the first page, the Lease states "You are required to provide and maintain insurance related to the Equipment ... ."   On the second page of the Lease it states:

> You will provide and maintain at your expense (a) property insurance against the loss, theft or destruction of, or damage to, the Equipment for its full replacement value, naming us as loss payee, and (b) public liability and third party property insurance naming us an additional insured.   You will give us certificates or other

1

> evidence of such insurance when requested. . . . If you do not give us evidence of insurance acceptable to us, we have the right but not the obligation, to obtain insurance covering our interest in the Equipment for the term of the Lease, including any renewals or extensions, from an insurer of our choice, including an insurer that is our affiliate.  We may add the costs of acquiring and maintaining such insurance and our fees for services in placing and maintaining such insurance (collectively, "Insurance Charge") to the amounts due from you under this lease. . .

After the Lease was executed, on or about October 20, 2016, Jones Realty received an

"Important Property Insurance Notice Letter" (the "Letter") that provided:

> Under the terms of our Agreement you must insure the equipment against loss, damage, destruction and theft for its replacement cost, naming us loss payee. . . . You can satisfy this requirement either by electing to participate in an insurance program that we have arranged or by obtaining your own insurance coverage. . . . Enclosed is a brochure that provides additional information about the insurance coverage under our policy.  IF YOU ELECT THIS OPTION, THERE IS NOTHING MORE TO DO.  We will add $19.58 to each of your invoices which includes the insurance charge and any administrative service fees. . . .

Compl., Ex. A., ECF No. 1-1, p. 1.  The Letter and the brochure enclosed with it stated:

> If you choose to have the equipment covered under our policy, you will be responsible for paying us a monthly charge as long as such coverage and your lease or loan agreement remain in effect.  Such coverage includes the premium costs and any administrative service fees. ***This charge to you may be more than the cost of insurance you can buy on your own . . . We or an affiliate of us may receive a financial benefit if you choose to have the equipment covered under our policy.***

Compl., ¶ 36, Ex. A., pp. 1, 4 (emphasis added).

Having been advised, in writing, that it must insure the Equipment with its own insurance or through CIT Bank, NA's program at an additional cost of $19.58 per month, and further advised at least once that the cost may be more than for insurance it could have obtained itself, Jones Realty failed to provide proof of alternative insurance and proceeded to pay the monthly Lease amounts, including the additional Insurance Charge of $19.58.  Compl., ¶¶ 33, 40.

CIT Group Inc. is not a party to the Lease between Plaintiff, a Missouri corporation, and

CIT Bank, NA.  *See*, Ex. I; Ex. II Declaration of Eric S. Mandelbaum ("Mandelbaum Dec."), at ¶¶ 2, 5, 6.  CIT Group Inc. is incorporated in the State of Delaware.  Mandelbaum Dec., Ex. A.  It is qualified to do business only in New York and New Jersey, and has its principal place of business in New York.  *Id.*, Exs. B and C.  It is not qualified to do business in the state of Florida (or in Missouri), and it does not engage in substantial, non-isolated activities in Florida.  *Id.*, at ¶¶ 1, 3-8.  It did not lease equipment to Plaintiff, collect lease payments from Plaintiff or charge Plaintiff for premium payments or other charges related to collateral protection insurance.  *Id.* at ¶ 8; Ex. III to this motion, Declaration of Steven Salisbury ("Salisbury Dec.") at ¶ 3.

As a holding company, CIT Group Inc. does not own or lease real property in the state of Florida.  *Id.*, at ¶¶ 1, 3.  It has no employees in Florida.  *Id.*, at ¶ 3.  It does not lease office equipment in the state of Florida or to Florida residents.  *Id.*, at ¶ 8.  It does not issue any insurance policies in Florida or to Florida residents.  *Id.*  Nor is it a party to any insuring or reinsuring agreement with Assurant, Inc., American Bankers Insurance Company of Florida or any other entity in the state of Florida which provides collateral protection insurance for leased equipment.  *Id.*  CIT Group Inc. does not charge premiums or other charges for collateral protection insurance for leased equipment in the State of Florida or from Florida residents.  *Id.*  It does not process or collect premium payments or other charges for collateral protection insurance for leased equipment in Florida or from Florida residents.  *Id.*

Although CIT Bank, N.A. is a subsidiary of CIT Group Inc.,  the two are separate entities and they maintain separate books and records.  Mandelbaum Dec. at ¶ 2.  CIT Group Inc. does not control the day-to-day operations of CIT Bank, N.A.  *Id.* at ¶ 4.  It does not negotiate, approve or control any lease agreements, reinsurance agreements, or other contracts entered into by CIT Bank, N.A.  *Id.*  It does not hire, fire, pay or control CIT Bank, N.A.'s employees.  *Id.*

## III.    ARGUMENT AND CITATION OF AUTHORITY

In support of its Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Defendant submits this brief, the Lease,[1] and the Mandelbaum and Salisbury declarations. Moreover, because CIT Group Inc. has proved that even the most basic jurisdictional allegations are simply inaccurate, no amount of discovery will enable Plaintiff to establish the requisite contacts between CIT Group Inc. and the state of Florida to salvage Plaintiff's claims in the face of this motion.   But, assuming, *arguendo*, jurisdiction over CIT Group Inc. is somehow constitutional, even construing the allegations of the Complaint in a light most favorable to Plaintiff, Plaintiff fails to state any claim at all against CIT Group Inc. in light of the complete absence of privity, or even interaction, between Plaintiff and CIT Group Inc.

### A.    THE COURT LACKS PERSONAL JURISDICTION OVER CIT GROUP

A federal court sitting in diversity must conduct a two-part inquiry to determine whether personal jurisdiction over a nonresident defendant exists: (1) there must be a basis for jurisdiction provided under the forum state's long arm statute and (2) the exercise of jurisdiction must comport with Federal due process requirements.  *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F. 3d 1201, 1203 (11th Cir. 2015); *Shells & Fish Import and Export Co. v. Process Engineering and Fabrication, Inc.*, 2013 WL 6842804, *2 (S.D. Fla. 2013); *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1353 (S.D. Fla. 2000).   Plaintiff bears the burden of presenting sufficient evidence to establish a prima facie case of personal jurisdiction over a nonresident defendant.  *East Okeechobee Palms LLC v. Kellam*, 2015 WL 12977392, (S.D. Fla. 2015); *Consolidated Dev. Corp., v. Sherritt, Inc.*, 216 F. 3d 1286, 1291 (11th Cir. 2000); *Shells & Fish*,

---

[1] The Court can consider the Lease attached to this motion, without converting the motion to dismiss into a motion for summary judgment because the Lease is central to all Plaintiff's claims. *See, e.g. Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F. 3d 1276, 1284 (11th Cir. 2007).

2013 WL at *2.  In determining jurisdiction, the Court "must accept the allegations in the complaint as true, to the extent that they are uncontroverted by the Defendant's affidavits and depositions, and must construe all reasonable inferences in favor of the Plaintiff."  *Id*.

Under Florida's long-arm statute, a non-resident defendant can be subject to *specific* personal jurisdiction for acts described in Fla. Stat. § 48.193(1)(a), or subject to *general* jurisdiction pursuant to section 48.193(2).  *Carmouche*, 789 F. 3d at 1204.  Specific jurisdiction arises from a foreign defendant's contacts with the forum state which were "not only . . . continuous and systematic, but also g[a]ve rise to the liabilities sued on."  *Id*. at 1204; *See Daimler A.G. v. Bauman*, 134 S. Ct. 746, 754 (2014) *quoting International Shoe Co. v. Washington*, 66 S. Ct. 154 (1945); *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

General jurisdiction, on the other hand, permits jurisdiction over any claims against a defendant, whether or not arising from its activities in Florida, and arises under the Florida long-arm statute if the defendant "engages in 'substantial and not isolated activity in Florida.'" *Carmouche*, 789 F. 3d at 1204 citing Fla. Stat. § 48.193(2). Constitutional due process is satisfied with an extension of general jurisdiction over a non-resident corporation where the defendant corporation's "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum state.'"  *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773, 1779 (2017);  *Daimler*, 134 S. Ct. at 752, *quoting Goodyear*, 131 S. Ct. at 2851.

### 1.    *Plaintiff Has Not Pled Facts To Support General Jurisdiction.*

Plaintiff does not specify which provision(s) of Florida's long-arm statute it is invoking with respect to CIT Group Inc.  To establish jurisdiction, Plaintiff alleges in shot-gun, conclusory

fashion, that the Court has jurisdiction over "Defendants because they are foreign corporations authorized to conduct business in Florida and have registered with the Florida Secretary of State, or do sufficient business in Florida, have sufficient minimum contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion, marketing, sale and administration of lending services and insurance policies in Florida.  This purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or related entities permissible under traditional notions of fair play and substantial justice."  Compl. at ¶ 15.  These allegations seemingly attempt to invoke the concept of general jurisdiction, rather than specific jurisdiction.

Section 48.193(2) is the general jurisdiction provision of Florida's long-arm statute, and it provides:  "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate or otherwise is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2). The touchstone of a constitutionally permissible extension of general jurisdiction under Florida's long arm statute over a non-resident defendant is that the Defendant's contacts with the forum are so "substantial and not isolated" that the defendant is fairly considered "at home" in the forum state, such as where the defendant is incorporated or maintains its principal place of business in the forum.  *See, Goodyear*, 131 S. Ct, at 2853; *Carmouche*, 789 F. 3d 1204.

However, the only jurisdictional facts alleged by Plaintiff about CIT Group Inc. are that "THE CIT GROUP, INC. is a Delaware corporation, with its principal place of business in Livingston, New York."  Compl. at ¶ 11.  With some clarification, the Declaration of Eric Mandelbaum establishes that the facts that CIT Group Inc. is a Delaware corporation, with its

principal place of business in New York, are undisputed.[2]  Mandelbaum Dec., at ¶ 1.  Similarly, it is undisputed that CIT Group Inc. is a financial holding company, while CIT Bank N.A., a separate entity and a federally chartered bank, is a subsidiary.  *Id. at* ¶ 2;  Compl., ¶ 11. However, contrary to Plaintiff's allegations, CIT Group Inc. is not qualified to do business in Florida, nor does it maintain a registered agent in Florida.  *Id.*  It is qualified to do business only in New York and New Jersey.  *Id.*

Additionally, CIT Group Inc. has no employees in Florida, and does not own or lease real property in Florida.   Mandelbaum Dec. at ¶ 3.   As the Lease reflects, and Mandelbaum's declaration confirms, CIT Group Inc. is not a party to the Lease between Plaintiff and CIT Bank N.A.  Mandelbaum Dec. at ¶ 8.  Moreover, Mandelbaum's and Salisbury's Declarations also make clear that CIT Group Inc. does not lease equipment in Florida, or to Florida residents, and does not charge or collect lease payments or insurance premiums for collateral protection insurance from any Florida resident.  Mandelbaum Dec. ¶ 8; Salisbury Dec. ¶ 9.

There are simply no allegations asserted by Plaintiff,  or unrefuted by the Mandelbaum and/or Salisbury Declarations, that would support an exercise of general jurisdiction over CIT Group Inc. in this case.  In fact, the Supreme Court has routinely rejected the exercise of general jurisdiction over non-resident defendants in cases in which the non-resident defendant had far greater contacts with the forum state than Plaintiff alleges of CIT Group Inc. here.  *See e.g.* *Goodyear Dunlop*, 131 S. Ct. at  2852 (overturning a finding of general jurisdiction by state court where tens of thousands of Defendants' tires manufactured in other countries made their way to the forum state); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868 (1984)

---

[2] CIT Group Inc.'s principal place of business is not in Livingston, which is in New Jersey, rather than New York.

(holding "mere purchases [made in the forum], even if occurring at regular intervals are not enough to warrant a State's assertion of general jurisdiction ... .")  And the Eleventh Circuit and district courts therein have appropriately followed suit.  *See, e.g., Carmouche*, 789 F. 3d at 1204 (overruling an extension of general jurisdiction over corporation where its contacts were "limited to having a Florida bank account and two Florida addresses, one of which is a post office box, purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to the jurisdiction of the Southern District of Florida for all lawsuits arising out of its agreements with [another defendant]."); *Shells & Fish*, 2013 WL, * 4 (declining to find general jurisdiction where defendants only contacts with Florida consist of:  "partnering" with a company that has an office in Florida, which company actually appears to have been a supplier; (2) negotiating from Virginia with Mr. Omana while he was in Florida; (3) and entering into a contract with Plaintiffs, which resulted in [Defendant's] directing invoices and wiring instructions to Plaintiffs and its receiving payments from Plaintiffs.") *Id. citing Fraser v. Smith*, 594 F. 3d 842, 844-45, 47 (11th Cir. 2010) ("no general personal jurisdiction where defendant:  (1) solicited business in Florida through advertisements; (2) contracted with Florida companies to secure liability insurance and other services; (3) purchased substantial assets from Florida entities; and (4) sent employees to Florida for business purposes.").  Plaintiff gives the Court no reason to diverge from this well settled body of binding precedent in this case.

2.      ***Plaintiff Has Not And Cannot Allege Facts Sufficient To Establish Specific Personal Jurisdiction.***

"Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint."  *Consolidated*, 216 F. 3d at 1291; *See Walden*, 134 S. Ct. at 1122; *Daimler A.G.*, 134 S. Ct. at 754.  Section 48.193(1)(a) is the specific-jurisdiction

provision of Florida's long-arm statute.   Fla. Stat. §48.193(1)(a); *Fraser*, 594 F. 3d at 847.

Although it is unclear upon which subsection Plaintiff relies in support of specific jurisdiction over

CIT Group Inc., or even whether Plaintiff attempts to invoke section 48.193(1) at all, under this

section a non-resident defendant corporation may be subject to personal jurisdiction for

"[o]perating, conducting, engaging in, or carrying on a business or business venture . . . in this

state", "committing a tortious act within this state", or "[b]reaching a contract in this state by failing

to perform acts required by the contract to be performed in this state."   *Kellam*, 2015 WL

12977392, *4.

Importantly, however, "[i]t has long been established that the Fourteenth Amendment

limits the personal jurisdiction of state courts." *Bristol-Myers Squibb*, 137 S. Ct. at 1779; *Daimler

A.G.*, 134 S. Ct. at 753-57.  With respect to specific jurisdiction, this means that there "must be an

affiliation between the forum and the underlying controversy, principally, [an] activity or an

occurrence that takes place in the forum State." *Brisol-Myers Squibb*, 137 S. Ct. at 1781; *Walden*,

134 S. Ct. at 1122. ("whether a forum state may assert specific jurisdiction over a nonresident

defendant focuses on the relationship among the defendant, the forum and the litigation") (internal

quotations omitted); *Goodyear*, 131 S. Ct. 2846.

Given the requirements to establish specific jurisdiction over CIT Group Inc., it becomes

clear that Plaintiff's omission of the Lease from the Complaint was not accidental.  The Lease

clearly identifies the lessor as CIT Bank, N.A., not defendant CIT Group Inc.  Additionally, the

Complaint at ¶ 32 describes Plaintiff as a "Missouri business" that "signed up with Avatel

Technologies, Inc." making clear that CIT Group Inc. had no involvement with the transaction

with Plaintiff that gave rise to the Lease or this litigation.   The only allegations of activity

emanating from Florida are Plaintiff's vague assertions that "CIT notified Plaintiff in writing that

it was providing financing for the equipment it was leasing from Avatel" and that "CIT notified [Plaintiff] after Plaintiff had already entered into the applicable agreement, that Plaintiff must insure the equipment. . ." Compl. at ¶¶ 34-35. However, the Declaration of Steven Salisbury makes clear that the letter and brochure were prepared and sent to the Plaintiff by American Bankers Insurance Company of Florida, using information provided to it by CIT Bank, N.A.. Ex. II, Salisbury Dec., at ¶ 2. Mr. Salisbury also attests that the monthly invoices sent to Plaintiff reflecting both the lease payment amount, plus the Insurance Charges, are prepared and mailed by a vendor located in New Jersey. *Id.* at ¶ 3.

All told, the admissions in the Complaint, and the uncontroverted facts in the Mandelbaum and Salisbury declarations render it undisputed that CIT Group Inc. did not engage in any activity in Florida related to Plaintiff, its lease, the insurance on the Leased Equipment, or the charges for the insurance. Mandelbaum Dec. at ¶ 8; Salisbury Dec. ¶ 3. Indeed, the Plaintiff is a Missouri corporation, with its principal place of business in Missouri. Compl. ¶ 8. If Plaintiff paid Insurance Charges in Missouri it suffered its "injury" (if any) in Missouri. Thus, even Plaintiff barely has any connection to the forum in this case. "But, the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S. Ct. at 1122. Rather, the minimum contacts requirements for specific jurisdiction "must be met as to each defendant over whom a state court exercises jurisdiction." *Brisol-Myers Squibb*, 137 S. Ct. at 1781.

As the Supreme Court has recently reiterated in *Bristol-Myers Squibb Co.*, a court lacks specific jurisdiction over a defendant where the plaintiff is a non-resident and any conduct between defendant and the plaintiff giving rise to the plaintiff's claims occurred outside the state. *Id.*, 137 S. Ct. at 1781; *Goodyear*, 131 S. Ct. at 2846. This is true even if the defendant has general, unrelated connections to the putative forum. *Id.* Thus, Plaintiff has not alleged facts that

demonstrate that this Court can exercise specific personal jurisdiction with respect to CIT Group Inc. based upon any actions of CIT Group Inc. toward Plaintiff in Florida, and vague, non-specific and conclusory allegations about unidentified "affiliated or related entities" of unidentified (presumably) defendants, such as Plaintiff makes here (Compl., ¶ 15), are not sufficient to establish a *prima facie* case of specific jurisdiction over CIT Group Inc.  *See, e.g. Kellam*, 2015 WL 12977392, *5; *Shells & Fish*, 2013 WL 6842804, *3.

Finally, because CIT Group Inc. has presented Declarations that establish that "there is no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery" any request for such should also be denied.  *Brown v. Carruval Corporation, et al.,* 202 F. Supp. 3d 1332, 1346 (S.D. Fla. 2016).  Moreover, the Declarations of Eric Mandelbaum and Steven Salisbury make clear that even if permitted discovery, Plaintiff is unlikely to be able to marshal facts sufficient to establish jurisdiction over CIT Group Inc. such that permitting Plaintiff jurisdictional discovery would be futile and a waste of the Court's and the parties' resources.  "Plaintiff is precluded from pursuing jurisdictional discovery in an attempt to marshal facts that [it] 'should have had – but did not –before coming through the courthouse doors.'"  *Id. (quoting Yepez v. Regent Seven Seas Cruises,* 2011 WL 3439943, *1 (S.D. Fla. Aug. 5, 2011)).

### B.    PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST CIT GROUP

Plaintiff alleges claims of breach of contract, breach of implied covenant of good faith, unjust enrichment and violation of the Florida Deceptive Unfair Trade Practices Act.  However, even construing the facts alleged in Plaintiff's shotgun pleading in a light most favorable to Plaintiff, the Complaint fails to state any claim against CIT Group Inc.  Plaintiff agreed that the Lease which is at the heart of its Complaint, "any claims … or causes of action … shall be governed … in accordance with Federal law and the laws of the State of New York … ."  *See* Ex. I.

Defendant American Bankers argues that Missouri law applies to the Plaintiff's claims against it because Plaintiff is  Missouri corporation, entered into the Lease in Missouri, and made the Lease payments, including the "Insurance Charge" from Missouri.  See American Banker's Brief at pp. 5-6.  However, whether the Court applies New York, Missouri or Florida law, the result is the same:  Plaintiff has failed to state a claim against CIT Group Inc.

> ### *1.    Plaintiff Fails to State a Breach of Contract Claim Because CIT Group Inc. was not a Party to the Lease.*

Plaintiff alleges as the basis of its breach of contract claim that "Avatel Technologies, Inc. and/or CIT Group Inc. breached the loan and/or lease agreement ... ." [3] Compl. at ¶ 63. Yet, from the face of the Lease it is apparent that neither Avatel nor CIT Group Inc. was even a party to the Lease, and thus neither could possibly have "breached" any provision of the agreement.  Doubtless this is why Plaintiff failed to attach a copy of its Lease with a third-party to the Complaint.

It is axiomatic that to prevail on a breach of contract claim, there must be a contract between the plaintiff, and the party alleged to have breached the contract.  *See, e.g., Bizrocket.com, Inc. v. Interland, Inc.*, 274 Fed. Appx. 776, 779 (11th Cir. 2008); *Alhassid v. Bank of America*, N.A., 60 F. Supp. 3d 1302, 1315 (S.D. Fla. 2014).  It is not sufficient that the named defendant is an affiliate of the party to the Lease.  *See, e.g., Bizrocket.com, Inc. v. Interland, Inc.*, 274 Fed. Appx. 776, 779 (11th Cir. 2008) (holding that plaintiff's purchase of the shares of a corporation did not operate to assign the corporation's rights under a preexisting contract between prior owner and defendant.); *Alhassid v. Bank of America*, N.A., 60 F. Supp. 3d 1302, 1315 (S.D. Fla. 2014) (dismissing Plaintiff's breach of contract, unjust enrichment and FDUTPA claims against Bank of America

---

[3] This is an example of Plaintiff's inappropriate "shotgun" pleading. *See* p. 20, infra.  The reader is left to wonder who supposedly breached, CIT Group Inc. or Avatel, and to wonder whether the transaction was a loan or a lease.

where complained of actions including assessment of improper fees and placing properties in default improperly took place after Bank of America relinquished ownership and/or servicing rights to co-defendant). New York and Missouri law are in accord. *See, e.g., American-European Art Assocs., Inc. v. Trend Galleries, Inc.*, 227 A.D .2d 170, 171 (N.Y.A.D. 1 Dept. 1996)(granting motion to dismiss where plaintiffs failed to demonstrate the existence of a signed written contract and statute of frauds precluded oral one); *Turner v. Wesslak*, 453 S.W. 3d 855, 858 (2014) (Overturning a judgement for plaintiff based upon an alleged breach of  a real property lease the court held: "[i]t has long been a basic tenet of contract law that one not a party to the contract is not bound thereby and is not liable for breach of a contract to which he is not a party.")(Internal quotation omitted). Thus, regardless of which state's law applies, because there was no contract between CIT Group Inc. and Plaintiff, Plaintiff has failed to state a claim for breach.

### 2. *Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing*

Plaintiff's claim for breach of implied covenant of good faith and fair dealing meets the same fate as the breach of contract claim. In Florida, "[a] breach of implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc. v. United Parcel Service, Co.,* 420 F. 3d 1146, 1152 (11th Cir. 2005); *Alhassid v. Bank of America*, N.A., 60 F. Supp. 3d 1302, 1314 (S.D. Fla. 2014). New York law dictates the same result. *American-European Art*, 227 A.D. 2d at 171 (dismissing breach of implied covenant claim for lack of a valid contract). Similarly, in Missouri, "a proper pleading of a claim for breach of the covenant of good faith and fair dealing requires the pleading of an existing contract." *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 892 (E.D. Mo. 2013). Thus, if there is no contractual obligation between Plaintiff and CIT Group Inc., there can be no breach of the implied covenant of good faith, any more than there can be a breach of

13

contract.  *Alhassid*, 60 F. Supp. 3d at 1314-15; *American-European Art*, 227 A.D. 2d at 171; *Reitz*,

954 F. Supp. 2d at 892.

  **3.**    ***Plaintiff Has Failed to State a Claim for Unjust Enrichment.***

  Plaintiff's Complaint also fails to state a claim for unjust enrichment against CIT Group

Inc. because Plaintiff has not plead facts regarding any interaction at all between Plaintiff and CIT

Group Inc.   In New York, to plead a claim of unjust enrichment, a Plaintiff must allege:  1) that

CIT Group Inc. was enriched; 2) at Plaintiff's expense; and 3) that it against equity and good

conscience to permit CIT Group Inc. to retain what Plaintiff seeks to recover.  *Georgia Malone &*

*Co., Inc. v. Rieder*, 973 N.E. 2d 743, 746 (N.Y. 2012).  Similarly, under Missouri and Florida law,

to survive dismissal of a claim of unjust enrichment, Plaintiff must plead facts that could establish:

1) that plaintiff conferred a benefit on CIT Group Inc.; 2) that CIT Group Inc. appreciated that

benefit; 3) and that CIT Group Inc. accepted and retained that benefit under inequitable and/or

unjust circumstances.  *Hawaiian Airlines, Inc. v. AAR Aircraft Services, Inc.*, 167 F. Supp. 3d

1311, 1321 (S.D. Fla. 2016); *American Safety Ins. Svc., Inc. v. Griggs*, 959 So. 2d 322 (Fla. App.

5 Dist. 2007); *Howard v. Turnbull*, 316 S.W. 3d 431, 436 (Mo. App. W.D. 2016); Plaintiff has

failed to state a claim for unjust enrichment against CIT Group Inc. because Plaintiff: 1) is party

to a contract governing the subject matter of this dispute, and is bound thereby; 2) has not alleged

facts that establish it conferred a benefit on CIT Group Inc. that CIT Group Inc. actually retained;

and 3) Plaintiff got exactly what it bargained for when it declined to provide proof of insurance,

and instead chose to pay the Insurance Charges assessed on each invoice from CIT Bank N.A.

  a.    <u>Plaintiff is Subject to a Contract Which Bars its Unjust Enrichment Claim</u>

  Plaintiff has failed to state a claim for unjust enrichment because Plaintiff is a party to a

contract governing the subject matter of this litigation.  There can be no doubt that the Lease covers

the subject matter of this dispute:  the Lease specifically and expressly imposes the obligation to insure the Lessor's interest in the leased equipment, and states that if the Lessee does not provide proof of insurance, the Lessor, CIT Bank, N.A., will include an "Insurance Charge" on its invoices to Plaintiff/Lessee.  This fact alone, is sufficient to warrant dismissal in light of the language on the face of the Lease establishing that the Lessor was CIT Bank, N.A., not CIT Group Inc.  *See, e.g., American Safety Ins. Svc., Inc. v. Griggs*, 959 So. 2d at 332 ("American Safety entered into agreements with [a third party] in which the parties received exactly what they bargained for."); *see also, Bazak Intern. Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004); *Howard*, 316 S.W. 3d at 437 ("if the plaintiff has entered into a contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract.)

      b.      <u>Plaintiff Conferred No Benefit On CIT Group Inc.</u>

Plaintiff's unjust enrichment claim also fails because it alleges no benefit conferred, appreciated or retained by CIT Group Inc.  *See American Safety, Inc.*, 959 So. 2d at 332; *Howard*, 316 S.W. 3d at 437-38; *Bazak*, 347 F. Supp. 2d 1, 4.  Again, the express terms of the Lease are clear:  in the event Plaintiff failed to provide proof of insurance, the Lessor, CIT Bank, N.A., not CIT Group Inc., would insure the equipment, and invoice Insurance Charges.  No benefit was conferred on or retained by CIT Group Inc.  As such, Plaintiff has failed to allege facts sufficient to establish any element of an unjust enrichment claim against CIT Group Inc.

      c.      <u>Plaintiff Got What It Bargained For.</u>

Plaintiff cannot state a claim for unjust enrichment when it got what it bargained for. *Hawaiian Airlines, Inc.*, 167 F. Supp. 3d at 1323; *Howard*, 316 S.W. 3d at 436.  As stated previously, the Lease expressly stated that Plaintiff was obligated to provide insurance for the

leased equipment, and that if it failed to do so, CIT Bank, N.A. would obtain coverage, through one of its affiliates. Complaint at ¶¶ 18.   The Complaint attaches a letter and a brochure that discuss the insurance options more extensively, and disclosed the exact amount ($19.58 per month) that would be charged to Plaintiff if it elected not to procure its own coverage.  Compl. Ex. A. Together with the Lease, Plaintiff has plead that it was advised, in writing, at least three times, of its obligation to provide proof of insurance, or pay the monthly Insurance Charge.  The brochure that was sent to Plaintiff even pointed out that: (1) "[t]his charge to you may be more than the cost of insurance you can buy on your own"; and (2) "We or an affiliate of us may receive a financial benefit if you choose to have the equipment covered under our policy."   Compl. Ex. A, p. 3.

Thus, the only reasonable inference from these communications and the Lease is that by electing not to procure its own coverage, Plaintiff got exactly what it bargained for – insurance coverage for the leased equipment at $19.58 per month.  Because Plaintiff got what it bargained for, it cannot state a claim for unjust enrichment under either Missouri or Florida law.  *Hawaiian Airlines, Inc.*, 167 F. Supp. 3d at 1323; *American Safety*, 959 So. 2d at 332; *Howard*, 316 S.W. 3d at 436 ("[T]here can be no unjust enrichment if the parties receive what they intended to obtain."); *Smith v. Chase Manhattan Bank USA, N.A.*, 293 A.D. 2d 598,. 600, 741 N.Y.S. 2d 100 (2002).

### 4.      *Plaintiff Fails To State A Claim For Violation Of FDUTPA.*

To state a claim for violation of Florida's Deceptive and Unfair Trade Practices Act, Plaintiff must plead "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Zlotnick v. Premier Sales Group, Inc.*, 480 F. 3d 1281, 1285 (11th Cir. 2007).  "This standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer."  *Id.* at 1284 (internal quotation omitted)  An act or practice is "unfair" if it causes injury that is "(1) substantial;

(2) not outweighed by any countervailing benefits to consumers or competition, and (3) one that consumers themselves could not have reasonably avoided." *Casey v. Florida Coastal School of Law, Inc.*, 2015 WL 10096084, *6 (M.D. Fla. 2015) (*quoting Porsche Cars N. Amer. Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014)).  Plaintiff has not stated a claim under FDUTPA against CIT Group Inc., because Plaintiff has alleged no credible facts indicating that CIT Group Inc. made any representations to Plaintiff, charged Plaintiff any insurance premiums, communicated with Plaintiff in any way, or participated at all in the insurance program of which Plaintiff complains.  This reason alone is sufficient to dismiss Plaintiff's FDUTPA claim against CIT Group Inc.  *Id.*

As the facts of *Casey* and *Zlotnick* demonstrate, Plaintiff's Complaint alleges no unfair or deceptive practices at all.  In *Casey*, law students claimed they entered Florida Coastal School of Law in reliance upon overstated employment and salary statistics published on the school's website, incurred debt to get their degrees, only to be unable to secure full-time legal employment. Dismissing plaintiff's claim, the court found that it would have been unreasonable for a prospective student to believe they were practically guaranteed full-time, permanent, amply paid jobs in an unstable economy and therefore any losses were reasonably avoidable. *Id.* at *15.  The Court explained that "FDUTPA does not require companies to be wholly transparent or prohibit them from publishing facts in the light most conducive to business, as long as the publication is not probably deceptive and likely to cause injury to a reasonably relying consumer, *Zlotnick*, 480 F. 3d at 1284, or resulting in substantial injury to consumers that they could not reasonably avoid and not outweighed by countervailing policies.  *Porsche*, 140 So. 3d at 1096."  *Casey*, 2015 WL 10096084, *15.

In *Zlotnick*, the court dismissed Plaintiff's claim that defendants canceled condominium

17

reservation agreements in order to increase prices because "the express terms of the reservation agreement undermine[d] Zlotnick's claim … ." *Id.* 480 F. 3d at 1285. The court found the reservation agreement stated that "it only expressed Zlotnick's "interest" in purchasing a specific unit and did not constitute a guaranteed purchase contract." *Id.* The agreement gave defendant the right to "cancel this agreement for any reason whatsoever" at any time prior to entering into the purchase contract. *Id.* Given the "broad cancellation provision and express terms indicating that the agreement conferred no interest in the proposed condominium unit, no reasonable purchaser would believe that the reservation agreement set a binding purchase price . . ." *Id.*

Similar to the facts in *Zlotnick*, and *Casey*, the Lease and the exhibit to the Complaint establish, as a matter of law, that Plaintiff has failed to state a FDUTPA claim because no reasonable person would believe that the coverage offered pursuant to the lender placed insurance program explained to Plaintiff, in writing, would provide insurance at or below "market price" or for less than the full amount of the equipment. *See*, Compl. at 37. The Complaint admits the Plaintiff was told that "[s]uch coverage includes the premium costs and any administrative service fees." *Id.* Neither the Lease, Letter, nor brochure (Compl. Ex. A) use the words "reasonable" or "actual" or "fair market value" with respect to the Insurance Charges. The Complaint admits that Plaintiff was told "[t]his charge may be more than the cost of insurance you can buy on your own" and that the Lessor "or an affiliate . . . may receive a financial benefit if you choose to have the equipment covered under our policy." Compl., at ¶ 36. No reasonable business person would be misled about the Collateral Protection Insurance program in any respect.

But even if that were not enough (and it is), the Plaintiff also fails to state a FDUTPA claim

against the Lessor[4] because Plaintiff could easily have avoided paying the Insurance Charge by obtaining its own and providing proof of coverage. Compl., Ex. A, pp. 1, 3.  Indeed, the Letter also informed Plaintiff that if "you subsequently provide verification of your own insurance that meets the requirements of the lease or loan agreement, then coverage under our policy will be cancelled on the effective date of your own insurance coverage and we will credit your account for any paid insurance charges . . ."  Compl. at ¶ 36.

### C.    PLAINTIFF'S SHOTGUN PLEADING SHOULD BE DISMISSED.

The Eleventh Circuit and this Court have become increasingly resistant to permitting a Plaintiff to survive the motion to dismiss stage where Plaintiff's pleading fails "to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F. 3d 1313, 1323 (11th Cir. 2015); *see also*, *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg, Corp.*, 305 F. 3d 1293, 1296 (11th Cir. 2002); *Riley v. Home Retention Servs., Inc.*, No. 14-20106, 2014 WL 11906642, at *5 (S.D. Fla. June 17, 2014).  American Bankers has explained in detail exactly how Plaintiff's pleading falls short of basic pleading requirements, intentionally obscuring the facts (or lack thereof) and about which defendant they are alleged.  Again, in the interest of judicial economy, CIT Group Inc. expressly incorporates those examples from pages 18-19 of American Banker's motion to dismiss and the argument associated therewith, as if set forth fully here.  CIT Group Inc. joins American Banker's plea that this Court should "dismiss the Complaint with instructions for Plaintiff to replead all claims not herein dismissed" to give the Defendants the benefit of a "coherent complaint." *Riley*, 2014 WL 11906642, at *5.

---

[4] Since the Lessor is a federally chartered bank, FDUTPA would not apply to it in any event. Fla. Stat. § 501.212(4)(c).

## CONCLUSION

Plaintiff's Complaint names CIT Group Inc., a Defendant (1) over which this court lacks jurisdiction, (2) which was not a party to the Lease which is central to Plaintiff's Complaint, and (3) which neither purchased nor charged for collateral protection insurance.  The Complaint substitutes conclusory statements and long narratives about what other unidentified, "Loaners, Lenders, and forced placed insurers" allegedly do to other, unidentified "consumers" for facts about what allegedly happened in this case.  The Complaint is littered with "and/ors" and blanket references to "Defendants" such that the reader cannot tell what is alleged to have done what to whom.  For all these reasons, the Complaint should be dismissed.

Dated: December 4, 2017.

Respectfully Submitted,

HOLLAND & KNIGHT LLP
*Counsel for CIT Group Inc.*
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

By:    */s/ Cory W. Eichhorn*
        Cory W. Eichhorn
        Florida Bar No. 576761
        cory.eichhorn@hklaw.com

and

Gregory J. Digel, *pro hac vice*
Georgia Bar No. 221750
Cynthia G. Burnside, *pro hac vice*
Georgia Bar No. 097107
1180 West Peachtree Street, NW, Suite 1800
Atlanta, Georgia  30309-3407
Telephone (404) 817-8500
Facsimile (404) 881-0470
greg.digel@hklaw.com
cynthia.burnside@hklaw.com
*Counsel for Defendant CIT Group Inc.*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of December, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on counsel identified in the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ <i>Cory W. Eichhorn</i>
Cory W. Eichhorn

## SERVICE LIST

Jason K. Whittemore, Esq.
Wagner McLaughlin, P.A.
601 Bayshore Boulevard, Suite 910
Tampa, FL 33606
Telephone: (813) 225-4000
Facsimile: (813) 225-4010
jason@WagnerLaw.com
arelys@WagnerLaw.com
*Counsel for Plaintiff*

Frank Burt, Esq.
Farrokh Jhabvala, Esq.
Irma T. Reboso-Solares, Esq.
Carlton Fields Jorden Burt, P.A.
100 S.E. Second Street, Suite 4200
Miami, FL 33131-2113
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
fburt@carltonfields.com
fjhabvala@carltonfields.com
isolares@carltonfields.com
*Counsel for American Bankers Insurance*
*Company of Florida and Assurant, Inc.*

Randall J. Love, Esq.
Randall J. Love, P.A.
7236 State Road 52, Suite 13
Bayonet Point, FL 34667
Telephone: (727) 857-6030
Facsimile: (727) 857-6052
mmjlove@aol.com
*Counsel for Avatel Technologies*