## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| **JONES REAL ESTATE, INC., d/b/a JONES REALTY**, individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**AVATEL TECHNOLOGIES, INC., THE CIT GROUP INC., and CIT BANK, N.A.,**<br><br>**Defendants.** | **Case No. 1:17-cv-23933**<br><br>**JURY TRIAL DEMANDED**<br><br>**Assigned to: Magistrate Judge John O'Sullivan** |

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs JONES REAL ESTATE, INC., d/b/a JONES REALTY, files this Class Action Complaint individually and on behalf of all other similarly situated against AVATEL TECHNOLOGIES, INC., THE CIT GROUP INC, and CIT BANK, N.A., ("Defendants"), alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

### INTRODUCTION

1.      Defendants have engaged in an elaborate scheme to nickel and dime Plaintiff and the Classes. Avatel Technologies, Inc. supplies equipment in accordance with a purchase agreement in connection with CIT Group, Inc. and CIT Bank, N.A. CIT Bank, N.A's joint venturer encourages customers who need office equipment to enter into an equipment lease financing agreement under the premise that doing so will save the customer money.  CIT Group, Inc. and CIT Bank, N.A. force place insurance when a customer fails to obtain or maintain insurance coverage on voice, data, and/or video equipment that is leased through financing. Under the typical

lease agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to "force place" a new policy on the equipment and then charge the premiums to the borrower.

2.      Defendants have engaged in a lucrative profit-making scheme. These companies and their affiliates enter into exclusive relationships with the equipment supplier, the equipment lease, and equipment finance companies to provide the insurance policies.  To maintain their exclusive relationships with these equipment lease and finance companies, the insurers pay an origination fee, offer them subsidized administrative services, and/or enter into lucrative captive reinsurance deals with them.

3.      CIT Group, Inc.'s joint venture company works with Plaintiff and the Class to sign a Lease Agreement.  The Lease Agreement states:

> "You are required to provide and maintain insurance related to ***the Equipment***, and to pay any property, use, and other taxes related to this Lease or the Equipment. (See Sections 4 and 6 on Page 2 of this Lease)."

(emphasis added). Lease Agreement dated 8/16/2016 at 1.

4.      Section 6 of the Lease Agreement provides:

> 6.  You will provide and maintain at your expense (a) property insurance against the loss, theft or destruction of, or damage to, the Equipment for its full replacement value, naming us as loss payee and (b) public liability and third party property insurance, naming us as an additional insured.  You will give us certificates or other evidence of such insurance when requested.  Such insurance will be in a form, amount and with companies acceptable to us, and will provide that we will be given 30 days advance notice of any cancellation or material change of such insurance. **If you do not give us evidence of insurance acceptable to us, we have the right, but not the obligation, to obtain insurance covering <u>our interest in the *Equipment*</u> for the term of this Lease**, including any renewals or extensions, from an insurer of our choice, including an insurer that is our affiliate.  We may add the costs of acquiring and maintaining such insurance and our fees for our services in placing and maintaining such insurance (collectively, "Insurance Charge") to the amounts due under this Lease.  You will pay the Insurance Charge in equal installments allocated to the remaining Lease Payments.  IF we purchase insurance, you will cooperate with our insurance agent with respect to the placement of insurance and the processing of claims.  Nothing in this Lease will create an insurance relationship of any type between us and any other person.  You

acknowledge that we are not required to secure or maintain any insurance, and we will not be liable to you if we terminate any insurance coverage that we arrange.  If we replace or renew any insurance coverage, we are not obligated to provide replacement or renewal coverage under the same terms, costs, limits, or conditions as the previous coverage.

(emphasis added).  Lease Agreement at 2, Section 6.

5.     Although force-placed insurance is designed to protect the lender's interest in the equipment that secures the loan and thus should not exceed that interest, CIT Bank, N.A., the lessor of the equipment and financer of the lease, and CIT Group, Inc., a joint venturer with the company who signs Plaintiff and the Class up for the leases, force place insurance for more than the value of the equipment being insured.  In particular, CIT Bank, N.A. and CIT Group Inc. place insurance not based on the equipment being insured, but instead place the insurance on the on value of the lease.  For example, instead of obtaining an insurance policy to cover Plaintiff's equipment that is worth approximately $644.00 (the amount of the purchase price of the equipment had Plaintiff purchased the equipment instead of leasing it), the insurance company insured the equipment for $10,235.00, nearly identical to the amount Plaintiff will have paid to CIT Bank, N.A. and CIT Group, Inc. over the course of the lease ($10,235.61).

6.     CIT Bank, N.A. has breached the terms of the Lease agreement by insuring the equipment for the value to CIT Bank, N.A. of the Lease (here, $10,235) instead of the value of the equipment itself (e.g., $644) and charging Plaintiff and the Class for the same.  At a minimum, Plaintiff and the Class have been damaged in an amount that equals the difference in the cost between a policy that insures equipment valued at $644 and a policy that insurance equipment valued at $10,235.

7.     Defendants' self-dealing and collusion in the force-placed insurance market has caused substantial harm to the named Plaintiff and the putative classes Plaintiff represents. This

class action seeks to redress that harm on behalf of these classes of consumers and to recover all improper costs they have incurred related to the forced placement of insurance by the lenders, their affiliates, and their cooperating insurers.

## PARTIES, JURISDICTION, AND VENUE

8.      Plaintiff JONES REALTY, INC., d/b/a JONES REALTY is corporation organized under the laws of Missouri with a principal place of business in Missouri.

9.      Defendant AVATEL TECHNOLOGIES, INC. ("Avatel" or "Defendants") is a Florida corporation, with a principal place of business in Brandon, Florida that supplies equipment that is ultimately leased to Plaintiff and the Class.

10.     THE CIT GROUP, INC. ("Defendants" or "CIT") is a Delaware corporation with its principal place of business in Livingston, New York.  CIT Group Inc. is a financial holding company founded in 1908 headquartered in New York City with more than $65 billion in assets that provides financing, leasing, and advisory services to the small business, middle market, and transportation sectors. CIT Group, Inc. is a joint venturer of the company who works with Plaintiff to sign a lease with CIT Group, Inc.'s principal bank subsidiary, CIT Bank, N.A.  The company's name is an abbreviation of an early corporate name, Commercial Investment Trust. It provides financing and leasing capital to customers in over 30 industries. CIT also operates CIT Bank, N.A., an FDIC insured bank, its primary bank subsidiary.  CIT Group, Inc., itself or through an agent, sends the negative option insurance contract, whose coverage exceeds the insurance required under the terms of the Lease.  The documentation sent to Plaintiff and the Class indicates that it is sent from CIT Insurance Service Center P.O. Box 979220, Miami, Florida 33197-9220.  *See* Exhibit 1, CIT Notice and Brochure, at 1.  The document is also signed by CIT.  *See* Exhibit 1, CIT Notice and Brochure, at 2.  The brochure describing the insurance, which was sent as an enclosure in the

CIT Notice sent from Miami, Florida, also bears the CIT stamp.  *See* Exhibit 1, CIT Notice and

Brochure, at 3-4.  CIT Group Inc., through its CIT Equipment Finance division, claims that it:

> "develops business solutions for small businesses and middle market companies for the acquisition of equipment and value-added services. It creates tailored technology and equipment financing and leasing programs for manufacturers, distributors, resellers, dealers, systems integrators and franchisors that are designed to help them increase their top and bottom line performance. It also acquires finance portfolios in its core markets: technology, office imaging, healthcare, industrial and franchise finance. Through these programs, CIT Equipment Finance provides a variety of financing and value-added services, from invoicing to asset disposition, customized to their customers' needs."

See: https://www.cit.com/equipment-finance/ (Last visited 12/28/2017).

It continues by misrepresenting the following:

> **"Customers turn to CIT Equipment Finance for:**
>
> • Finance leasing with predictable, low monthly payments
> • Reduced upfront costs and preservation of capital
> • Flexible pay structures and invoice capabilities
> • Ability to bundle transactions
> • Keep up with changes to technology
> • Potential accounting and tax advantages"

See: https://www.cit.com/equipment-finance/ (Last visited 12/28/2017).

The CIT Group Inc.'s Equipment Finance division is located at 10201 Centurion Parkway North,

Suite 100 in Jacksonville, Florida 32258.

11.    CIT Bank, N.A. is the principal bank subsidiary of CIT Group Inc.  The Lease

Agreement also at issue in this lawsuit states "When we use the words we, us and our in this Lease,

we mean the Lessor, CIT BANK, N.A. Our address is 10201 Centurion Parkway North, Suite 100

in Jacksonville, Florida 32258."  *See*, Exhibit 2, Lease Agreement, at 1.  CIT Bank, N.A. also

finances the equipment lease.  CIT Bank, N.A., itself or through an agent, sends the negative option

insurance contract, whose coverage exceeds the insurance required under the terms of the Lease.

The documentation sent to Plaintiff and the Class indicates that it is sent from CIT Insurance

Service Center P.O. Box 979220, Miami, Florida 33197-9220 *See* Exhibit 1, CIT Notice and Brochure, at 1.  The document is also signed by CIT.  *See* Exhibit 1, CIT Notice and Brochure, at 2.  The brochure describing the insurance, which was sent as an enclosure in the CIT Notice sent from Miami, Florida, also bears the CIT stamp.  *See* Exhibit 1, CIT Notice and Brochure, at 3-4.

12.    All of the wrongdoing alleged in this complaint stems from activities that occur in Florida.

13.    At all times herein mentioned, the acts and omissions of Defendants as set forth more fully below proximately caused the injuries and damages as herein alleged.

14.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.) in that:

    a.  the number of members of the proposed plaintiff class is greater than 100;

    b.  members of the plaintiff class are citizens of a State different from any Defendant;

    c.  the amount in controversy, aggregated among all individual class members, plus statutory damages and attorney's fees, exceeds $5 million.

15.    This Court has jurisdiction over Defendants because they are foreign corporations authorized to conduct business in Florida, are doing business in Florida and have registered with the Florida Secretary of State, or do sufficient business in Florida, have sufficient minimum contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion, marketing, sale, and administration of lending services and insurance policies in Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or related entities permissible under traditional notions of fair play and substantial justice.

16.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants transact business and may be found in this District, as detailed above and below venue is also proper here because at all times relevant hereto a substantial portion of the practices complained of herein occurred in the Southern District of Florida.

17.     All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

18.     Permitting a lender and/or lessor to forcibly place insurance on leased and/or financed equipment and to charge the borrower the full cost of the premium is neither a new concept nor a term undisclosed to borrowers in loan and/or lease agreements. The standard form loan and/or lease agreements used by most major lenders and/or lessors include a provision requiring the borrower to maintain hazard insurance coverage on the equipment being leased, and, in the event the insurance lapses, permit the lender to obtain force-placed coverage and charge the premiums to the borrower rather than declare the borrow in default.

19.     What is unknown to borrowers and not disclosed in the loan and/or lease agreements is that CIT Group, Inc.'s joint venturer has an direct origination agreement with CIT Group, Inc. to sign up companies like Plaintiff and the Class CIT Bank, N.A. in a lease that will cost the company more than 15 times the actual cost of equipment.  CIT Bank, N.A., CIT Group, Inc.'s primary bank subsidiary, and CIT Group, Inc. enters into an agreement with American Banker's Insurance Company to send paperwork on behalf of CIT through the Insurance Services Department located in Florida notifying Plaintiff that Plaintiff "must insure the equipment against loss, damage, destruction and theft for its replacement cost" and that one option is to "Insure *Equipment* Under The Property Insurance Program That We Have Arranged." (emphasis added).

7

However, instead of insuring the equipment, CIT Bank, N.A. insures its interest in the Lease and charges that amount to Plaintiff.  Additionally, losses under $100 are not covered.  So, it many instances the policy is worthless when needed.

20.     Defendant automatically charges the inflated premium amount to Plaintiff and Plaintiff is forced to pay them.

21.     Additionally, CIT's Group Inc.'s joint venture and Avatel, the equipment provider, sells a Service Protection Plan that becomes effective at the point of sale; but only provides benefits once the warranty has expired, so the Protection Plan's coverage is illusory.  Had Plaintiff known this fact, it would not have opted to have the Service Protection Plan coverage.

**Force Placed Insurance Scheme**

22.     CIT Bank, N.A., CIT Group, Inc., and their loan and/or lease servicers purchase master or "umbrella" insurance policies that cover the entire portfolio of loan and/or lease loans. In exchange, the insurer obtains the exclusive right to force insurance on leased and/or financed equipment within the portfolio when the borrower does not have insurance or the lender determines the lessee's and/or borrower's existing insurance is inadequate. The insurer monitors the lender's loan portfolio for lapses in lessee's and/or borrower's insurance coverage. Once a lapse is identified, the insurer, at the authorization and control of Defendant CIT Group, Inc. and CIT Bank, N.A., sends notice to the borrower that insurance will be "purchased" and force-placed if proof of adequate insurance coverage is not provided.

23.     No individualized underwriting ever takes place for the force-placed coverage.  The coverage that is ultimately placed on Plaintiff's leased equipment is based on the cost of the lease to Plaintiff and the Class Members and is not based on the cost of the equipment itself in violation of the Lease Agreement.  The inflated insurance is automatically placed on the equipment.

24.     Once coverage is forced on the equipment, the lender and/or lessor automatically charges the borrower and/or lessee for the insurance premiums. The lender and/or lessor, through their exclusive force-placed vendor, automatically adds the amount to the borrower's and/or lessee's monthly invoice.

25.     The actions and practices described above are unconscionable and done in bad faith with the sole objective to maximize profits. Borrowers who for whatever reason have not provided proof of insurance are charged hyper-inflated and illegitimate non-competitive "premiums" for force-placed insurance that include undisclosed kickbacks to the aforementioned Defendants or their affiliates (who, as described above, perform little to no functions related to the force-placement of the individual policies), as well as the cost of captive reinsurance arrangements and administrative services.

**Equipment Protection Plan**

26.     Avatel and a joint venture of CIT Group, Inc. have an agreement to induce customers into signing an agreement that contains the following language:

> "By signing below, Customer hereby orders and agrees to purchase via 3rd party financing or in whole from Avatel Technologies, Inc. (AVATEL) products identified on this Quotation Purchase Agreement in accordance with the attached Avatel Terms and Conditions […]."

27.     Avatel then enrolls customers into a worthless Services Protection Plan.  Avatel claims: "The Protection Plan will commence upon execution of the agreement between both parties, certification and receipt of payment agreed upon[;]" however, in small font on page 3 of 5 of a separate document states that "Avatel Technologies, Inc (Avatel) and you, the customer, agree that the following terms and conditions will apply to post warranty maintenance (Services) listed on the attached agreement."

28.     Upon information and belief, Plaintiff paid for the Services Protection Plan since

the inception of the agreement, yet the plan would not cover anything until after the warranty expired.  Such business practices are unfair and deceptive.  Additionally, there is an ambiguity in the applicable agreements, which must be construed against the drafter.  As a result, Defendant has breached the terms of the Service Protection Plan agreement.  Additionally, Plaintiff was paying for a year of Service Protection Plan that had no value because that which the plan purportedly covers is already covered by the Warranty.  Additionally, Avatel acts as an agent for the third-party financing company, CIT Group.  Avatel is also unjustly enriched in that Plaintiff believes Avatel receives compensation for encouraging customers to save money, including by obtaining third party financing through CIT Group and receives compensation from CIT Group for doing so.

29.     Furthermore, Plaintiff and Class Members do not in the normal course of their business have insurance on the phones provided by Avatel Technologies, Inc; therefore, it was almost without question that Plaintiff and Class Members would need the insurance forced on them by CIT Group, Inc. and CIT Bank, N.A. as result of a contract provision, drafted and imposed by CIT Bank, N.A. and a joint venturer of CIT Group, Inc.

30.     This action is brought to put an end to CIT Group Inc. and CIT Bank,N.A.'s, exclusive, collusive, and uncompetitive arrangements, and to recover for Plaintiff and the Classes the amounts charged to them for the inflated insurance policy.

31.     This action is also brought to put an end to Avatel Technologies Inc.'s and CIT Group, Inc.'s unfair and deceptive business practices of charging for a Service Protection Plan that does not cover anything until the warranty expires.

**Plaintiff Jones Real Estate, Inc., d/b/a Jones Realty**

32.     Plaintiff Jones Real Estate, Inc., d/b/a Jones Realty is a Missouri business who

signed up with Avatel Technologies, Inc. and a CIT Group, Inc.'s Joint Venturer to provide telephone equipment.

33.     Avatel and CIT Group, Inc.'s joint venturer works with Plaintiff and the Class to sign a Lease Agreement.  The Lease Agreement states:

> "You are enquired to provide and maintain insurance related to **the Equipment**, and to pay any property, use, and other taxes related to this Lease or the Equipment. (See Sections 4 and 6 on Page 2 of this Lease)."

(emphasis added). Lease Agreement dated 8/16/2016 at 1.

34.     Section 6 of the Lease Agreement provides:

> 6.  You will provide and maintain at your expense (a) property insurance against the loss, theft or destruction of, or damage to, the Equipment for its full replacement value, naming us as loss payee and (b) public liability and third party property insurance, naming us as an additional insured.  You will give us certificates or other evidence of such insurance when requested.  Such insurance will be in a form, amount and with companies acceptable to us, and will provide that we will be given 30 days advance notice of any cancellation or material change of such insurance. **If you do not give us evidence of insurance acceptable to us, we have the right, but not the obligation, to obtain insurance covering <u>our interest in the Equipment</u> for the term of this Lease**, including any renewals or extensions, from an insurer of our choice, including an insurer that is our affiliate.  We may add the costs of acquiring and maintaining such insurance and our fees for our services in placing and maintaining such insurance (collectively, "Insurance Charge") to the amounts due under this Lease.  You will pay the Insurance Charge in equal installments allocated to the remaining Lease Payments.  IF we purchase insurance, you will cooperate with our insurance agent with respect to the placement of insurance and the processing of claims.  Nothing in this Lease will create an insurance relationship of any type between us and any other person.  You acknowledge that we are not required to secure or maintain any insurance, and we will not be liable to you if we terminate any insurance coverage that we arrange.  If we replace or renew any insurance coverage, we are not obligated to provide replacement or renewal coverage under the same terms, costs, limits, or conditions as the previous coverage.

(emphasis added).  Lease Agreement at 2, Section 6.

35.     A letter was sent to Jones Real Estate Inc., <u>**after**</u> Plaintiff had already entered into the applicable Lease agreement, that Plaintiff must insure the equipment against loss, damage,

destruction and theft for its replacement cost, naming [CIT] as loss payee and must provide proof of said insurance.

36.     Plaintiff did not provide proof of insurance to Defendant CIT Group.

37.     The Important Property Insurance Notice Letter at 1 (dated 10/20/2016) provided:

If you choose to have the equipment covered under our policy, you will be responsible for paying us a monthly charge as long as such coverage and your lease or loan agreement remain in effect.*  Such coverage includes the premium costs and any administrative service fees. This charge to you may be more than the cost of insurance you can buy on your own.

If the policy described in this brochure is used to provide coverage on the equipment, and you subsequently provide verification of your own insurance that meets the requirements of the lease or loan agreement, then coverage under our policy will be cancelled on the effective date of your own insurance coverage and we will credit your account for any paid insurance charges up to a maximum period of six (6) months.

The information contained herein is general and should not be considered a complete representation of any coverage on equipment under our policy. The actual terms, conditions and exclusions in the policy will prevail over the information in this brochure. You are not an insured, an additional insured, or a loss payee under this policy. We or an affiliate of us may receive a financial benefit if you choose to have the equipment covered under our policy.

Our, we and us refer to the lessor/lender identified on the front of the brochure.

See Exhibit A.

38.     At no time did Plaintiff agree to pay for insurance at a higher price than market price for insurance for the leased equipment and/or at no time did Plaintiff agree to pay for insurance for the leased equipment that was in excess of the value of the leased equipment as more fully described herein.

39.     Nevertheless, Defendant CIT forced placed insurance that had broader coverage than what was required to protect the interest of the Defendant in the following respects: the policy insured equipment valued at $10,235 when Plaintiff's equipment was valued at or about $644.

40.     CIT Group, Inc. and CIT Bank, N.A. authorizes an agent to send a letter and

brochure regarding the insurance program.  Additionally, CIT Group, Inc. and CIT Bank N.A. charge Plaintiff for an insurance coverage that exceeds the value of the equipment leased or financed.  Plaintiff was charged $19.58 a month for each month of the lease for the force-placed insurance, which includes the excessive charge for hyper-inflated insurance.

41.     Additionally, an agent for Avatel Technologies, Inc. and a Joint Venturer of CIT Group, Inc. induced customers into signing an agreement that contains the following language: "By signing below, Customer hereby orders and agrees to purchase via 3rd party financing or in whole from Avatel Technologies, Inc. (AVATEL) products identified on this Quotation Purchase Agreement in accordance with the attached Avatel Terms and Conditions […]." The agent then then enrolled Plaintiff into a worthless Services Protection Plan.

42.     The Services Protection Plan language states: "The Protection Plan will commence upon execution of the agreement between both parties, certification and receipt of payment agreed upon[;]" however, in small font on page 3 of 5 of a separate document states that "Avatel Technologies, Inc (Avatel) and you, the customer, agree that the following terms and conditions will apply to post warranty maintenance (Services) listed on the attached agreement."

43.     Upon information and belief, Plaintiff paid for the Services Protection Plan since the inception of the agreement, yet the plan would not cover anything until after the warranty expired.  Such business practices are unfair and deceptive.  Additionally, there is an ambiguity in the applicable agreements, which must be construed against the drafter.  As a result, Defendant has breached the terms of the Service Protection Plan agreement.  Additionally, Plaintiff was paying for a year of Service Protection Plan that had no value because that which the plan purportedly covers is already covered by the Warranty.

44.     Additionally, Avatel is unjustly enriched in that Plaintiff believes Avatel receives

compensation for encouraging customers to save money, including by obtaining third party financing through CIT Group, Inc. and CIT Bank, N.A. and receives compensation from CIT Group, Inc. and CIT Bank, N.A. for doing so.

45.     A percentage of the premium was kicked back to CIT and one of its Joint Venturers.

46.     Also, CIT unilaterally imposed unconscionable lease terms on Plaintiff and the Classes in that the cost of the equipment lease is grossly disproportionate to the actual value of the equipment subject to the lease.

47.     There is no material difference between these Defendants' respective actions and practices directed to Plaintiff and their respective actions and practices directed to the Class.

## CLASS ALLEGATIONS

### A.     Class Definitions

48.     Plaintiff brings this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of itself and all other persons similarly situated.

49.     Plaintiff seeks to represent the following classes:

All borrowers and/or lessees in the United States who, within the applicable statutes of limitations, were charged for a forced-placed insurance policy placed on equipment leased and/or financed through CIT Group, Inc. and/or its joint venturer. ("Nationwide Force Placed Insurance Class")

All borrowers and/or lessees in Missouri who, within the applicable statutes of limitations, were charged for a forced-placed insurance policy placed on equipment leased and/or financed through CIT Group, Inc. and/or its joint venturer. ("Missouri Force Placed Insurance Class")

All individuals and/or entities in the United States who paid for an Avatel Technologies, Inc. Service Protection Plan during the warranty period. ("Nationwide Service Protection Plan Class")

All individuals and/or entities in Missouri who paid for an Avatel Technologies, Inc. Service Protection Plan during the warranty period. ("Missouri Service Protection Plan Class")

### B.     Numerosity

50.     The proposed classes are so numerous that joinder of all members would be impracticable. Defendant CIT Group leases and provides financing for telephone equipment and force places insurance policies on customers in the states of Missouri, Florida, and other states nationwide. The individual class members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by each of the Defendants. The precise number of class members for each class numbers at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

### C.     Commonality

51.     There are questions of law and fact that are common to all Plaintiff's and class members' claims. These common questions predominate over any questions that go particularly to any individual member of the Classes. Among such common questions of law and fact are the following:

a.     Whether CIT Group, Inc. and CIT Bank, N.A. charged borrowers for unnecessary insurance coverage including, but not limited to, insurance coverage that exceeded the amount required by law or the borrowers' loans and/or leases and/or backdated coverage that covered periods of time for which CIT Group, Inc. and CIT Bank, N.A. had no risk of loss;

b.     Whether CIT Group, Inc. and CIT Bank, N.A. has been unjustly enriched at the expense of the Plaintiff and the Classes;

c.     Whether CIT Group, Inc. and CIT Bank, N.A.  breached the implied covenant of good faith and fair dealing by entering into exclusive arrangements with selected insurers and/or

their affiliates, which resulted in inflated insurance premiums being charged to Plaintiff and the Classes;

      d.      Whether  CIT Group, Inc. and CIT Bank, N.A. manipulated forced-placed loan and/or lease purchases in order to maximize their profits to the detriment to Plaintiff and the Classes;

      e.      Whether affiliates of the  CIT Group, Inc. and CIT Bank, N.A. perform any work or services in exchange for the "commissions" or other "compensation" they collect; and/or

      f.      Whether the premiums charged for Leased and Financed Equipment Protection are inflated to include kickbacks and unwarranted "commissions."

      g.      Whether the fees charged for the Service Protection Plan are charged during the warranty period;

      h.      Whether the Service Protection Plan provides benefits during the warranty period;

      i.      Whether an objective consumer would be deceived by CIT Group, Inc., CIT Bank, N.A., Avatel Technologies, and CIT Group, Inc.'s joint venturer's arrangement, which incentivizes CIT Bank, N.A. and CIT Group, Inc. to charge excessive fees for force-placed insurance, and therefore violates Florida's Deceptive and Unfair Trade practices law;

      j.      Whether CIT Bank, N.A., CIT Group, Inc., or CIT Group, Inc.'s joint venture unilaterally imposed unconscionable lease terms on Plaintiff and Class in that the cost of the equipment lease is grossly disproportionate to the actual value of the equipment subject to the lease;

      l.      Whether Plaintiff and the Class Members are entitled to damages and/or injunctive relief as a result of Defendants' conduct.

**D.      Typicality**

52.      Each Plaintiff is a member the Class he or she seeks to represent. Plaintiff's claims are typical of the respective classes' claims because of the similarity, uniformity, and common purpose of the Defendants' respective unlawful conduct. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendants' respective wrongful conduct.

**E.      Adequacy of Representation**

53.      Plaintiff is an adequate representative of the class Plaintiff seeks to represent and will fairly and adequately protect the interests of that class.  Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

54.      To prosecute this case, Plaintiff has chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.      Requirements of Fed. R. Civ. P. 23(b)(3)**

55.      The questions of law or fact common to Plaintiff's and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiff and the unnamed class members are based on the force-placed insurance policies that CIT Group, Inc., CIT Bank, N.A., and CIT Group, Inc.'s joint venturer unlawfully, unfairly, and deceptively secured and their deceptive and egregious actions involved in securing the force-placed policy.  Additionally, the claims of Plaintiff and the unnamed class members are also based on Avatel Technologis, Inc., CIT Group, Inc., CIT Bank, N.A., and CIT Group, Inc.'s

joint venturer's wrongdoing related to the Service Protection Program.

56.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

57.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**G.     Superiority**

58.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a)     Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

(b)     Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions;

(c)     There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

(d)     The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(e)     Individual suits would not be cost effective or economically maintainable as individual actions; and

(f)     The action is manageable as a class action.

**H.     Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

59.     Prosecuting separate actions by or against individual class members would create a

risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

60.     Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

61.     **Certification of Particular Issues.  Fed. R. Civ. P. 23(c)(4).**  Issue certification is also appropriate because the following particular issues (among others) exist that may be brought or maintained as a class action:

a.      Whether CIT Group, Inc. and CIT Bank, N.A. charged borrowers for insurance coverage that exceeded the amount authorized under the Lease Agreement;

b.      Whether CIT Group, Inc. and CIT Bank, N.A. has been unjustly enriched at the expense of the Plaintiff and the Classes;

c.      Whether CIT Group, Inc. and CIT Bank, N.A.  breached the implied covenant of good faith and fair dealing by entering into exclusive arrangements with selected insurers and/or their affiliates, which resulted in inflated insurance premiums being charged to Plaintiff and the Classes;

d.      Whether CIT Group, Inc. and CIT Bank, N.A. manipulated forced-placed loan and/or lease purchases in order to maximize their profits to the detriment to Plaintiff and the Classes;

e.      Whether affiliates of the  CIT Group, Inc. and CIT Bank, N.A. perform any work or services in exchange for the "commissions" or other "compensation" they collect; and/or

f.      Whether the premiums charged for Leased and Financed Equipment Protection are inflated to include kickbacks and unwarranted "commissions."

g.      Whether the fees charged for the Service Protection Plan are charged during the warranty period;

h.      Whether the Service Protection Plan provides benefits during the warranty period;

i.      Whether an objective consumer would be deceived by CIT Group, Inc., CIT Bank, N.A., Avatel Technologies, and CIT Group, Inc.'s joint venturer's arrangement, which incentivizes CIT Bank, N.A. and CIT Group, Inc. to charge excessive fees for force-placed insurance, and therefore violates Florida's Deceptive and Unfair Trade practices law; and/or

j.      Whether CIT Bank, N.A., CIT Group, Inc., or CIT Group, Inc.'s joint venture unilaterally imposed unconscionable lease terms on Plaintiff and Class in that the cost of the equipment lease is grossly disproportionate to the actual value of the equipment subject to the lease.

**COUNT I**
**BREACH OF CONTRACT**
**(Against CIT Bank, N.A. on behalf of All Classes EXCEPT the "Nationwide and Missouri Service Protection Plan Classes")**

62.     Plaintiff re-alleges and incorporates paragraphs 1 through 60 above as if fully set forth herein and further allege as follows.

63.     Plaintiff brings this claim on behalf of all Classes except the Nationwide and Missouri Service Protection Plan Classes.  (collectively referred to in this Count as the "Classes" and members thereof as "Class Members").

64.     Plaintiff and Members of the Classes similarly situated have loan and/or leases that are owned and/or serviced by CIT Bank, N.A.

65.     Plaintiff's and these Class Members' Lease Agreements are uniform and contain substantially similar provisions by the CIT Bank, N.A. regarding force-placed insurance requirements and its placement.

66.     Plaintiff's and the Class Members' Lease Agreements require that they maintain insurance on their <u>equipment</u> and provide that if they fail to do so, then the lender and/or lessor may obtain insurance coverage to protect its interest, "force place" it, and charge the borrower / lessee the cost of the insurance.

67.     Specifically, CIT Bank, N.A. promises that: "If you do not give us evidence of insurance acceptable to us, we have the right, but not the obligation, to obtain insurance covering <u>our interest in the *Equipment*</u> for the term of this Lease[.]"

68.     Plaintiffs and the Class Members' Lease Agreements do not require that they maintain insurance on the value of the <u>lease</u>.

69.     Specifically, CIT Bank, N.A. breached the Lease Agreement by force placing insurance in an amount that exceeds the value of the equipment and charging Plaintiff the inflated premiums that are based on the value of the lease.

70.     CIT Bank, N.A. has further breached the terms of the Lease Agreement by charging borrowers for force-placed insurance premiums that are not reasonable or appropriate to protect the note-holder's interest in the equipment and rights under the security instrument.

71.     Plaintiff and the Class members have suffered damages as a result of the CIT Bank N.A.'s breaches of contract.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks compensatory damages resulting from The CIT Bank, N.A.'s breach of contract, as well as injunctive relief preventing it from further violating the terms of the loans and/or leases. Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

## <u>COUNT II</u>
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against CIT Bank, N.A. on behalf of All Classes EXCEPT the "Nationwide and Missouri Service Protection Plan Classes)

72.     Plaintiff re-alleges and incorporates paragraphs 1 through 65 above as if fully set forth herein and further alleges as follows.

73.     Plaintiff brings this claim on behalf of all Classes except the Nationwide and Missouri Service Protection Plan Classes.  (collectively referred to in this Count as the "Classes" and members thereof as "Class Members").

74.     A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

75.     Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

76.     Plaintiff and the Class Members' Lease Agreement allow the loan and/or lease servicer to force place an insurance policy on the borrower's equipment in the event of a lapse in coverage.

77.     The Lease Agreement affords CIT Bank, N.A. absolute discretion in force placing insurance coverage. They are permitted to unilaterally choose the company from which they purchase insurance and negotiate a price for the coverage they procure. CIT Bank, N.A. have an obligation to exercise the discretion afforded them in good faith, and not capriciously or in bad faith. Plaintiff does not seek to vary the express terms of the loan and/or lease contract, but only to ensure that the CIT Bank, N.A. exercise their discretion in good faith.

78.     The CIT Bank, N.A. breached the implied covenant of good faith and fair dealing by, among other things:

(a)     Force placing insurance coverage in excess of that required to cover the lender's

and/or lessor's interest in the equipment (i.e., more than the value of $644).

(b)     Force placing insurance coverage in the amount of the Lease ($10,235).

79.     As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Classes have suffered damages.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek a judicial declaration determining that the premiums charged and the terms of the force-placed insurance policies violate the duties of good faith and fair dealing. Plaintiff also seeks compensatory damages resulting from CIT Bank, N.A.'s breaches of their duties. Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

**COUNT III**
**UNJUST ENRICHMENT**
**(Against The CIT Group Inc., on behalf of All Classes EXCEPT the "Nationwide and Missouri Service Protection Plan Classes)**

80.     Plaintiff re-alleges and incorporates paragraphs 1 through 65 above as if fully set forth herein and further alleges as follows:

81.     Plaintiff brings this claim on behalf of all Classes except the Nationwide and Missouri Service Protection Plan Classes.  (collectively referred to in this Count as the "Classes" and members thereof as "Class Members").

82.     The CIT Group Inc. received from the above-named Plaintiff and Class Members benefits in the form of inflated insurance premiums related to force-placed insurance policies that exceeded the value of the equipment leased by Plaintiffs in an amount that equals the cost of the Lease.

83.     CIT Group Inc. entered into an agreement whereby a joint venture or CIT Group, Inc. and the insurance companies would provide force-placed insurance policies to The CIT Group Inc. through their preferred insurance carriers for the portfolio of loans and/or leases monitored on

behalf of The CIT Group Inc. The CIT Group Inc. would then charge Plaintiff and the Classes premiums based on the value of the Lease to CIT Bank, N.A. as opposed to the value of the equipment leased.

84.    The CIT Group Inc. also collected premiums on force-placed policies that provided coverage in excess of that required by law or the borrowers' loan and/or lease agreement, and in excess of that required to protect the lender's interest in its collateral.

85.    CIT Group, Inc.'s joint venturer collected significant monies tied directly to the cost of the force-placed insurance premium. Origination fees, commissions, or kickbacks were paid directly to The CIT Group Inc. as a result.

86.    The Origination fees, commissions, or kickbacks were subsumed into the price of the insurance premium and ultimately paid by the borrower. Therefore, CIT Bank, N.A., CIT Group, Inc., Avatel Technologies, Inc., and CIT Group, Inc.'s joint venturers had the incentive to charge and collect unreasonably inflated prices for the force-placed policies.

87.    Further, The CIT Group Inc. received financial benefits in the form of kickbacks and for other financial payments from the insurance company providing the insurance.

88.    As a result, Plaintiff and the Classes have conferred a benefit on CIT Group, Inc.

89.    CIT Group, Inc. had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

90.    CIT Group, Inc. will be unjustly enriched if they are allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which Defendants were unjustly enriched at his or her expense.

**WHEREFORE**, Plaintiff, individually and on behalf of all similarly situated Class Members, demand an award against CIT Group, Inc. in the amounts by which CIT Group, Inc. has

been unjustly enriched at Plaintiff's and the Class Members' expense, and such other relief as this Court deems just and proper.

## COUNT IV
## BREACH OF CONTRACT
### (Against The CIT Group Inc., or alternatively, CIT Bank, N.A., on behalf of All Classes EXCEPT the "Nationwide and Missouri Service Protection Plan Classes) (In the alternative to Unjust Enrichment)

91.     Plaintiff re-alleges and incorporates paragraphs 1 through 65 above as if fully set forth herein and further alleges as follows.

92.     Plaintiff brings this claim on behalf of all Classes except the Nationwide and Missouri Service Protection Plan Classes.  (collectively referred to in this Count as the "Classes" and members thereof as "Class Members").

93.     Plaintiff and the Class Members' Lease Agreement allow the loan and/or lease servicer to force place an insurance policy on the borrower's equipment in the event of a lapse in coverage.

94.     From Miami, Florida, CIT Group Inc., or in the alternative, CIT Bank, N.A., sent a negative option contract to Plaintiff for Leased and Financed Equipment Protection Plan.

95.     The loss payee under the coverage is "CIT".

96.     The signatory on the negative option contract letter is "CIT".

97.     CIT is the d/b/a of CIT Group, Inc.  In the alternative, CIT is a d/b/a of CIT Bank, N.A.

98.     The terms of the negative option contract were:

Option 1: Insure **Equipment** Under the Property Insurance Program That We Have Arranged

Since many customers prefer not to obtain their coverage or have asked us to assist them in securing coverage on their leased or financed equipment, we have arranged for coverage which satisfies the property insurance requirement contained in the

Agreement

99.    The letter encloses a brochure "that provides additional information about the insurance coverage under our policy."

100.    Later, the letter states: "IF YOU ELECT THIS OPTION, THERE IS NOTHING MORE TO DO."

101.    Plaintiff's equipment is valued at or near $644.

102.    CIT Group, Inc., or in the alternative, CIT Bank, N.A., insured Plaintiff's equipment with a policy with coverage in the amount of $10,235.

103.    Plaintiff's will pay $10,236.35 to CIT Bank, N.A. by the end of Plaintiff's lease.

104.    The negative option contracts of Plaintiffs and the Class Members do not provide that insurance coverage will be for more than the value of the equipment.

105.    The negative option contracts of Plaintiffs and the Class Members do not provide that insurance will be placed on the value of the <u>lease</u>.

106.    Specifically, CIT Group, Inc., or alternatively, CIT Bank, N.A. breached the negative option contract by force placing insurance in an amount that exceeds the value of the equipment and charging Plaintiff the inflated premiums that is based on the value of the Lease.

107.    CIT Group, Inc., or in the alternative, CIT Bank, N.A., has further breached the negative option contract by charging borrowers for force-placed insurance premiums that are not reasonable or appropriate to protect the note-holder's interest in the equipment and rights under the security instrument.

108.    Plaintiff and the Class members have suffered damages as a result of the CIT Group, Inc., or in the alternative, CIT Bank, N.A.'s breaches of the negative option contract.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks compensatory damages resulting from The CIT Group, Inc.'s, or in the alternative, CIT Bank,

N.A.'s, breach of the negative option contract, as well as injunctive relief preventing it from further violating the terms of the negative option contract. Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

**COUNT V**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against The CIT Group Inc., or alternatively, CIT Bank, N.A., on behalf of All Classes**
**EXCEPT the "Nationwide and Missouri Service Protection Plan Classes)**
**(In the alternative to Unjust Enrichment)**

109.    Plaintiff re-alleges and incorporates paragraphs 1 through 65 above as if fully set forth herein and further alleges as follows.

110.    Plaintiff brings this claim on behalf of all Classes except the Nationwide and Missouri Service Protection Plan Classes.  (collectively referred to in this Count as the "Classes" and members thereof as "Class Members").

111.    A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

112.    Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

113.    From Miami, Florida, CIT Group Inc., or in the alternative, CIT Bank, N.A., sent a negative option contract to Plaintiff for Leased and Financed Equipment Protection Plan.

114.    The loss payee under the coverage is "CIT".

115.    The signatory on the negative option contract letter is "CIT".

116.    CIT is the d/b/a of CIT Group, Inc.  In the alternative, CIT is a d/b/a of CIT Bank, N.A.

117.    The terms of the negative option contract were:

Option 1: Insure **Equipment** Under the Property Insurance Program That We Have Arranged

Since many customers prefer not to obtain their coverage or have asked us to assist them in securing coverage on their leased or financed equipment, we have arranged for coverage which satisfies the property insurance requirement contained in the Agreement

118.    The letter encloses a brochure "that provides additional information about the insurance coverage under our policy."

119.    Later, the letter states: "IF YOU ELECT THIS OPTION, THERE IS NOTHING MORE TO DO."

120.    Specifically, CIT Group, Inc., or alternatively, CIT Bank, N.A. breached the covenant of good faith and fair dealing by force placing insurance in an amount that exceeds the value of the equipment and charging Plaintiff the inflated premiums that is based on the value of the Lease.

121.    CIT Group, Inc., or in the alternative, CIT Bank, N.A., has further breached the covenant of good faith and fair dealing by charging borrowers for force-placed insurance premiums that are not reasonable or appropriate to protect the note-holder's interest in the equipment and rights under the security instrument.

122.    Plaintiff and the Class members have suffered damages as a result of the CIT Group, Inc., or in the alternative, CIT Bank, N.A.'s breaches of the covenant of good faith and fair dealing.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks compensatory damages resulting from The CIT Group, Inc.'s, or in the alternative, CIT Bank, N.A.'s, breach of the covenant of good faith and fair dealing, as well as injunctive relief preventing it from further violating the terms of the covenant of good faith and fair dealing. Plaintiff further

seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

**COUNT VI**
**VIOLATION OF NYS GBL 349**
**(Against The CIT Group Inc., or alternatively, CIT Bank, N.A., on behalf of All Classes**
**EXCEPT the "Nationwide and Missouri Service Protection Plan Classes)**

123.    Plaintiff re-alleges and incorporates paragraphs 1 through 61 above as if fully set forth herein and further alleges as follows.

124.    Plaintiff brings this claim on behalf of all Classes except the Nationwide and Missouri Service Protection Plan Classes (collectively referred to in this Count as the "Classes" and members thereof as "Class Members").

125.    Because the Lease Agreement includes a Choice of Law Provision, NYS GBL 349 is applicable.

126.    Section 349 of NY GBL prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any services in New York.

127.    Defendants' Lease to all named Plaintiffs and members of the Classes as described herein constitute the "conduct of any trade or commerce" within the meaning of N.Y. Gen. Bus. Law §§ 349.

128.    Plaintiff and members of the Classes are consumers within the meaning of those laws.

129.    Defendants' advertisement of the Lease to Plaintiffs and the Classes as described herein constitute the "false advertising in the conduct of any business, trade or commerce" within the meaning of NYS GBL 349.

130.    CIT Bank, N.A., in the normal course of their business, provided lease financing for Plaintiff's equipment.

131.   CIT Group, Inc. and CIT Bank, N.A., in the normal course of their business, force placed insurance that exceeded the value of the equipment leased.

132.   CIT Group, Inc. and CIT Bank, N.A. both affirmatively misrepresented in written materials that any insurance obtained on behalf of Plaintiff and the Classes would be for the value of the equipment.  Instead, the insurance placed was for the value of the LEASE, which is 15 times more than the value of the equipment.

133.   Through their employees, agents, and representatives, violated N.Y. Gen. Bus. Law § 350 by CIT Group, Inc. and CIT Bank, N.A. both failed to disclose that any insurance obtained on behalf of Plaintiff and the Classes would be for the value of the Lease and not just the value of the equipment.  The insurance placed was for the value of the LEASE, which is 15 times more than the value of the equipment.  This constitutes deceptive acts or practices that violate NYS GBL 349.

134.   Plaintiff and members of the Classes are consumers within the meaning of N.Y. Gen. Bus. Law § 350.

135.   As a direct and proximate result of Defendants' acts and practices, Plaintiff and Classes were damaged.

136.   By engaging in the acts and practices alleged above, Defendants engaged in deceptive business practices in violation of NY GBL § 349.

137.   By reason of such violations and pursuant to N.Y. Gen. Bus. Law § 349, Plaintiffs and members of the Classes are entitled to recover all of the monies paid for the excessive premiums; any and all statutory damages; and to recover any and all consequential damages recoverable under the law.

## COUNT VII
## VIOLATION OF THE FLORIDA DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT
**(against CIT Group, Inc. on behalf of All Classes EXCEPT the "Nationwide and Missouri Service Protection Plan Classes)**

138.    Plaintiff re-alleges and incorporates paragraphs 1 through 61 above as if fully set forth herein and further alleges as follows.

139.    Plaintiff brings this claim on behalf of all Classes except the Nationwide and Missouri Service Protection Plan Classes.  (collectively referred to in this Count as the "Classes" and members thereof as "Class Members").

140.    FDUTPA, section 501.201, *et seq.,* Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

141.    The Plaintiff and the Florida Subclass are "consumers" as that term is defined in section 501.203(7) of FDUTPA.

142.    CIT Group, Inc. has engaged in, and continue to engage in, unconscionable acts or practices and engaged in unfair or deceptive acts in the conduct of their trade and/or commerce in the State of Florida.

143.    The policies, acts and practices alleged herein were intended to result and did result in the payment of inflated premiums for force-placed insurance by the Plaintiff and the Classes, which in turn were intended to generate unlawful or unfair compensation for The CIT Group, Inc.

144.    Specifically, The CIT Group, Inc., in the negative option offer, (a) failed to disclose that the negative option insurance policy it would place on behalf of the Plaintiff and the Class Member's coverage exceeded the value of the equipment – essentially in an amount equal to the cost of the Lease; and (b) misrepresented that the negative option insurance that would be placed

Case 1:18-cv-01949-PKC   Document 47   Filed 12/29/17   Page 32 of 36

on behalf of the Plaintiff and Class Members was an insurance policy with coverage that was in the value of the equipment.

145.    The CIT Group, Inc.'s misrepresentations, omissions, and other conduct described in this complaint violate FDUTPA and was conceived, devised, planned, implemented, approved, and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA.

146.    The CIT Group, Inc., unilaterally imposed "Lease Insurance" (as opposed to Equipment Insurance) terms onto Plaintiff and the Class Members.

147.    The CIT Group, Inc. is not a bank or savings and loan associations regulated by the Florida Office of Financial Regulation of the Financial Services Commission. Further, this entity is not a bank or savings and loan association regulated by federal agencies.

148.    The above-named Plaintiff and the Classes sustained damages as a direct and proximate result of The CIT Group, Inc.'s unfair and unconscionable practices. Section 501.211(2), Florida Statutes provides Plaintiff and the Classes a private right of action against The CIT Group, Inc. and entitles them to recover their actual damages, plus attorneys' fees and costs.

149.    The above-named Plaintiff and the Classes have suffered and will continue to suffer irreparable harm if The CIT Group, Inc. continue to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE,** Plaintiff, individually and on behalf of all others similarly situated, demand judgment against The CIT Group, Inc. for compensatory damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

<u>COUNT VIII</u>
<u>VIOLATION OF THE FLORIDA DECEPTIVE AND</u>
<u>UNFAIR TRADE PRACTICES ACT</u>
**(against CIT Group, Inc. and Avatel Technologies, Inc. on behalf of the Nationwide and Missouri Service Protection Plan Class)**

150.    Plaintiff re-alleges and incorporates paragraphs 1 through 61 above as if fully set forth herein and further alleges as follows.

151.    Plaintiff brings this claim on behalf of the Nationwide and Missouri Service Protection Plan Classes.  (collectively referred to in this Count as the "Classes" and members thereof as "Class Members").

152.    FDUTPA, section 501.201, *et seq.,* Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

153.    The Plaintiff and the Classes are "consumers" as that term is defined in section 501.203(7) of FDUTPA.

154.    Avatel Technologies, Inc. and CIT Group, Inc.'s joint venturer have engaged in, and continues to engage in, unconscionable acts or practices and engaged in unfair or deceptive acts in the conduct of their trade and/or commerce in the State of Florida.

155.    Avatel Technologies, Inc. and CIT Group, Inc.'s joint venturer's policies, acts and practices alleged herein were intended to result and did result in the payment of a fee for Service Protection Plan by the Plaintiff and the Classes, which was advertised to commence upon the execution of an agreement, certification and receipt of payment agreed upon; however, the Protection Plan only provides benefits post warranty.

156.    Thus, Plaintiff and the Service Protection Plan Classes were damaged by CIT Group and Avatel Technologies paying the Service Protection Plan during the warranty period.

157.    Avatel Technologies, Inc.'s conduct of representing that the Service Protection Plan "will commence upon execution of the agreement between both parties, certification and receipt of payment agreed upon" and omitting the material fact that benefits will not be provided under the plan until after the warranty period is unfair, unconscionable, unlawful, and deceptive and violated FDUPTA.  Additionally, charging a fee for Service Protection Program to Plaintiff and class members during the warranty period, despite not provide any coverage during that period, violates FDUTPA.  Lastly, Avatel concealed the fact that benefits were not provided under the Service Protection Plan until after the warranty period.  Avatel's policies and practices were conceived, devised, planned, implemented, approved, and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA.

158.    CIT Group, Inc. permits Avatel Technologies to use its' joint venturer's stamp on all of its forms and refers to Avatel Technologies, Inc. as its business partner.  *See, e.g*., Exhibit 3, Service Protection Plan.

159.    The above-named Plaintiff and the Class sustained damages as a direct and proximate result of Avatel Technologies, Inc.'s and CIT Group's unfair and unconscionable practices. Section 501.211(2), Florida Statutes provides Plaintiff and the Classes a private right of action against Avatel and entitles them to recover their actual damages, plus attorneys' fees and costs.

160.    The above-named Plaintiff and the Classes have suffered and will continue to suffer irreparable harm if Avatel Technologies, Inc. and CIT Group continues to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE,** Plaintiff, individually and on behalf of all others similarly situated, demand judgment against Avatel for compensatory damages, pre- and post-judgment interest,

attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated demand judgment against Defendants as follows:

(1)     Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and their counsel to be representatives of the Classes;

(2)     Enjoining Defendants from continuing the acts and practices described above;

(3)     Awarding damages sustained by Plaintiff and the Classes as a result of Defendants' breaches of the subject loan and/or lease contracts and the implied covenant of good faith and fair dealing, together with pre-judgment interest;

(4)     Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiff and the Classes, together with pre-judgment interest;

(5)     Awarding Plaintiff and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Classes' counsel and experts, and reimbursement of expenses;

(6)     Awarding the Plaintiff and Subclass damages, injunctive relief, declaratory relief, attorneys' fees, and costs under the relevant states' consumer protection act; and

(7)     Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and the Classes request a jury trial for any and all Counts for which a trial by jury

is permitted by law.

Dated:  December 29, 2017        By: /s/   *Jason K. Whittemore*
                                JASON WHITTEMORE, ESQUIRE
                                Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of December, 2017, a true and correct copy of

the foregoing First Amended Complaint was served on all counsel of record via the Court's

CM/ECF system.

                                By:    /s/      Jason Whittemore
                                WAGNER MCLAUGHLIN, P.A.
                                Jason K. Whittemore
                                Florida Bar #:  0037256
                                601 Bayshore Blvd., Suite 910
                                Tampa, Florida 33606
                                Telephone: (813) 225-4000
                                Email: jason@WagnerLaw.com
                                Secondary email: arelys@wagnerlaw.com

                                **ATTORNEYS FOR PLAINTIFF AND THE
                                PROPOSED CLASSES**